CALDERON, APPELLEE, *v.* SHARKEY, APPELLANT.

(No. 81-1315—Decided June 23, 1982.)

*Messrs. Roderick & Trifelos* and *Mr. George H. Trifelos,* for appellee.

*Messrs. Vogelgesang, Howes, Lindamood, Zawaly & Brunn, Mr. Glenn W. Vogelgesang* and *Mr. Robert B. Daane,* for appellant.

SWEENEY, J.   The question presented in this appeal is whether the trial court abused its discretion in limiting cross-examination on appellant's medical expert's bias and pecuniary interest. In reviewing this issue, we must keep in mind that "[t]he term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is

unreasonable, arbitrary or unconscionable. *Steiner* v. *Custer* (1940), 137 Ohio St. 448; *Conner* v. *Conner* (1959), 170 Ohio St. 85; *Chester Township* v. *Geauga Co. Budget Comm.* (1976), 48 Ohio St. 2d 372." *State* v. *Adams* (1980), 62 Ohio St. 2d 151, at pages 157-158.

Appellant contends that "Ohio Rules of Evidence 103(A) and 403(B) grant a trial court broad discretion in limiting the cross-examination of a medical expert on issues of bias and pecuniary interest," and that "this discretion is not abused where the court permits a general inquiry on issues of bias and prejudice but limits its scope on the grounds of undue delay or needless presentation of cumulative evidence." In the case at bar, the trial court sustained objections to two questions in a series of questions relating to the expert's alleged bias. The two questions ruled inadmissible went to the ongoing business relationship between defense counsel and the expert and the number of times the expert had testified for defendants in the previous year. The court allowed questions going to the expert's fees, the frequency of his testimony in the then current year, and his exclusive appearances for defendants.[3]

---

[3] The relevant portions of the disputed cross-examination include the following colloquy:

"Q. Alright. Are you being paid to testify here today?

"A. I'm being paid for my time.

"Q. And what is the amount that you are being paid for your testimony today?

"A. That all depends on when I get done.

"Q. Well, let's assume that you get done in five minutes.

"Mr. Vogelgesang: I expect to pay whatever the Doctor charges. I have no . . .
"* * *

"A. Well, there was a misunderstanding and I showed up at 10:30 this morning. Then I left and came back at 1:00.

"Q. Okay. You mean you can't tell us about what you're being paid to be here today?

"A. Well, I'll tell you what I would be paid for the first hour, but I'd have to sit down and figure out the rest of it. I'm not that good at mathematics in my head. I normally get paid $350.00 for my first hour in the courtroom.

"Q. I see. And then what after that?

"A. Well, I usually get $75.00 for each additional fifteen minutes.

"Q. Usually?

"A. Usually.

"Q. Is that what you're charging in this case?

"A. I don't know, I'm going to go home and think about it.

"Q. Okay. Now, did you have a conference with Mr. Vogelgesang before coming here to testify today?

The record indicates that the court permitted appellee to inquire into the expert's financial interest at some length, and the

"A. Yes. It's customary.

"Q. And when did you have your conference with Mr. Vogelgesang?

"A. We had a conference last evening and another conference today.

"Q. Did you have any more conferences with Mr. Vogelgesang concerning your testimony in this case besides last night and this morning?

"A. Not to my knowledge, not that I recall.

"Q. How much time did you spend with him last night?

"A. About an hour.

"Q. You charge him for that?

"A. Sure. It's my time.

"Q. At the same rate, or how much?

"A. It won't be the same rate.

"Q. I see. Now, you said you spent thirty minutes with Ann Calderon and you reviewed some records. How much time did you spend reviewing records?

"A. About six hours.

"Q. Six hours?

"A. Yes sir.

"Q. And you wrote somewhat of a, what, fifteen page report?

"A. Yes sir.

"Q. For Mr. Vogelgesang, right?

"A. Yes sir.

"Q. And in those six hours, what are you charging for that?

"A. I can't tell you. It's all charged and paid for. I couldn't even begin to tell you what I charged for it.

"Q. Well, you certainly must know what you charge.

"A. I don't know what I charge for that.

"Q. You don't know what you charge for that?

"A. I can't tell you what I charged him for it.

"Q. How many times have you worked for the office of Mr. Vogelgesang in examining people who are making claims for injuries this year?

"Mr. Vogelgesang: Note a continuing objection to this.

"The Court: That part will be sustained.

"Q. How many times have you testified this year on behalf of defendants? This year.

"Mr. Vogelgesang: Object.

"The Court: He may answer that.

"A. I couldn't tell you, because I don't keep track of the times I've been in court.

"Q. Well, has it been more than twice?

"A. Oh, maybe four or five times.

"Q. This year?

"A. Yes.

"Q. How about last year? How many times did you testify on behalf of defendants?

"Mr. Vogelgesang: Objection.

"The Court: Sustained.

jury was made abundantly aware that Dr. Hanley would be paid by appellant's counsel for the services he performed in connection with the instant litigation. Thus, notwithstanding the two excluded questions appellee had a sufficient evidentiary basis to argue on the issues of bias and pecuniary interest, which issues were squarely before the jury by virtue of the testimony that the court deemed admissible on these matters.[4]

Evid. R. 403(B) grants the trial court discretion to limit questioning if the "probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." The trial court apparently was of the view that the excluded questions would delay the proceedings or be cumulative. We are not prepared to say that in ruling these questions inadmissible the trial court's attitude was unreasonable, arbitrary, or unconscionable. It is important to remember that the question before this court is not whether the trial court ruled as we would have ruled if confronted with these questions, but whether the court abused its discretion so as to prejudice appellee. We stated that general rule in *O'Brien* v. *Angley* (1980), 63 Ohio St. 2d 159, 163:

"The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge. Thus, when the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion."

Although the *O'Brien* case was not decided under the rules,

"Q. How many times have you testified on behalf of a person that's claiming injury this year in court?

"Mr. Vogelgesang: Object.

"The Court: Overruled, he may answer.

"A. None.

"Q. None.

"A. Those would be my own patients and I'm not doing that much traumatic work anymore.

"Mr. Trifelos: No further questions, thank you.

"The Court: Any redirect?

"Mr. Vogelgesang: Yes."

[4] We can only speculate about whether appellee might have been able to elicit the desired testimony by rephrasing the questions to which objections were sustained.

the principle enunciated therein remains applicable pursuant to Evid. R. 102.[5] Thus *O'Brien* and now the rules stand for the proposition that close evidentiary questions are within the domain of the trial court.[6]

The Court of Appeals majority seemed to assume the bias of medical experts. The opinion below cast somewhat sinister aspersions on doctors who forsake clinical practice to testify in court. In accordance with this view, the majority would have allowed extensive questioning on all matters touching upon the expert's business practices and his relationship with defense counsel irrespective of cumulativeness and collaterality. The court below has apparently established a double standard for expert witnesses whereby "a healer of the sick" is *ipso facto* more credible than "a professional witness." It is this characterization of medical experts that has prompted the amicus, Ohio State Medical Association, to file its brief in this cause.

The amicus argues that the dichotomy developed by the court below is faulty because "[t]he rules regarding discovery and cross-examination of treating physicians who appear as witnesses, and examining physicians who appear as expert witnesses, are essentially the same, and the participation at trial of both types of witnesses is necessary to the proper disposition of medically-related litigation in this state." We agree with the amicus that the rules do not support the distinction drawn by the Court of Appeals' majority.[7] Evidence of bias and pecuniary interest is a legitimate subject of inquiry of

---

[5] Evid. R. 102 states in pertinent part:

"* * * These rules shall be construed to state the common law of Ohio unless the rule clearly indicates that a change is intended and shall not supersede substantive statutory provisions."

[6] A major criticism levelled at the rules prior to their adoption was that the rules granted trial courts too much discretionary authority. See Walinski and Abramoff, The Proposed Ohio Rules of Evidence: The Case Against, 28 Case W. Res. L. Rev. 344, 370 ("* * * broad discretionary exceptions introduced in the Federal Rules are carried into the proposed Ohio Rules of Evidence and constitute the most disturbing feature of both").

[7] Evid. R. 601(D), which is the rule equivalent of R. C. 2743.43, does create an exception whereby non-practicing medical experts are incompetent to testify in a limited range of cases. There is no suggestion in the case at bar that either the cause itself or the expert fell within the Evid. R. 601(D) exception.

all expert witnesses within the limits imposed by the trial court in the reasonable exercise of its discretion. One category of otherwise competent experts, however, is not to be singled out as a matter of law to be questioned more extensively and to be required to produce more detailed records than other experts on matters relating to bias and prejudice. If in a particular case it appears to the trial judge that a medical expert, or for that matter, a treating physician, should be cross-examined in considerable detail on bias and interest, then we are confident that the court will permit a party to pursue this line of questioning. If, on the other hand, it appears that digressive excursions into the expert's past dealings serve no useful purpose in demonstrating bias and interest, then the court may properly limit the scope of the inquiry pursuant to Evid. R. 403(B).

We should stress the salient point that we do not hereby create any *per se* rule with respect to the scope of cross-examination on the subject of an expert witness' bias and financial interest. To the contrary, we hold, consistent with *O'Brien* and Evid. R. 403(B), that the scope of cross-examination of a medical expert on the question of the expert's bias and pecuniary interest and the admissibility of evidence relating thereto are matters that rest in the sound discretion of the trial court. Accordingly, the trial judge did not err either in excluding the disputed questions or in sustaining appellant's motion *in limine*.[8]

For the reasons hereinbefore stated the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

W. Brown, Locher and Krupansky, JJ., concur.

Holmes, J., concurs in the syllabus and judgment.

Celebrezze, C. J., and C. Brown, J., dissent.

Clifford F. Brown, J., dissenting. Because I feel that the trial court unreasonably restricted the cross-examination of the defendant's expert witness and that such rulings prej-

---

[8] Having determined that the trial court committed no error, we find it unnecessary to discuss appellant's contention that even if the trial court had erred such error did not prejudice "a substantial right of the party * * * affected" and was therefore harmless pursuant to Evid. R. 103(A).

udiced the substantial rights of the plaintiff, I must respectfully dissent from today's decision.

I agree with the majority in its observation that the trial court has broad discretion in determining the scope of cross-examination. Indeed, the Ohio Rules of Evidence mandate such an approach. However, I will not hesitate to find an abuse of that discretion when a trial court precludes effective cross-examination through the imposition of excessive restraints which thwart the truth-seeking process. This also is dictated by the Rules.[9]

Evid. R. 403(B) sets forth the two recognized circumstances under which a trial court may exclude relevant evidence. To do so, the probative value of the evidence sought to be admitted must be "substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Neither of these contingencies was present in the case at hand.

First, inquiry into the pecuniary relationship between the defense attorney and his witness for the purpose of impeachment could hardly be viewed as an "undue delay" to any proceeding. Questions relating to the expert's alleged bias could have been proffered in a matter of minutes.

Second, such a presentation would not have been cumulative. Although the trial court allowed cross-examination into the more general area of the number of times the witness had testified on behalf of defendants during the past year, the trial court refused to allow the unique relationship which existed between the defense attorney and his witness to be explored. It was this specific and continuing relationship upon which plaintiff sought to impeach the witness. Without it, plaintiff did not possess a sufficient evidentiary basis to argue to the jury the legitimate issues of bias and pecuniary interest.

I fail to see, in a case such as this, where negligence has

---

[9] See Evid. R. 611 which states in pertinent part:

"(A) *The court shall exercise reasonable control* over the mode and order of interrogating witnesses and presenting evidence *so as to* (1) *make the interrogation and presentation effective for the ascertainment of the truth* * * *

"(B) *Cross-examination shall be permitted on all relevant matters and matters affecting credibility.*" (Emphasis added.)

See, also, *O'Brien* v. *Angley* (1980), 63 Ohio St. 2d 159.

been admitted, how the serious curtailment of cross-examination of the major defense witness could result in anything but prejudice to the substantial rights of the plaintiff. In my view, Judge Putman, writing for the majority in the Court of Appeals' decision, was correct in holding that:

"* * * The nature of the financial relationship between the non-treating medical expert offering opinion evidence and the attorney favored by his opinion is a proper subject of inquiry. It is properly in the scope of the jury function to determine what extent, if any, that relationship bears subconsciously or otherwise upon the opinion of the witness.

"A ruling disallowing that inquiry * * * is clearly an unreasonable curtailment of that right [of cross-examination]."

Accordingly, I would affirm the judgment of the Court of Appeals.

CELEBREZZE, C. J., concurs in the foregoing dissenting opinion.