SUSANU et al., Appellants

v.

CLICHE; Cruso et al., Appellees.

[Cite as *Susanu v. Cliche* (2001), 143 Ohio App.3d 776.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77884.

Decided June 11, 2001.

Michael J. O'Shea, for appellants.

Keller & Curtin Co., G. Michael Curtin and Joseph G. Ritzler, for appellees.

MICHAEL J. CORRIGAN, Presiding Judge.

Plaintiffs Octavian Susanu and Marius Mihalcea brought this negligence action against defendant Joe Cruso,[1] claiming that defendant negligently collided with their vehicle. In a motion in limine, plaintiffs asked that defense counsel be barred from asking the treating physician at the Cleveland Therapy Center how plaintiffs were referred to his office. Plaintiffs' counsel believed that the questions would be intended to show a relationship between counsel and physician that would suggest a medical bias towards finding an injury and resulting damages. The court denied the motion and a jury returned a defense verdict. The sole issue in this appeal is whether the court abused its discretion by denying the motion in limine.

Plaintiffs and defendant were involved in a two-car collision. Each blamed the other for the accident. Plaintiffs left the scene of the accident and sought treatment ten hours later. They were examined and released with instructions to follow-up as needed. They did not seek follow-up medical treatment. Three months after the accident, plaintiffs saw an attorney who recommended that they visit the Cleveland Therapy Center for further treatment. Plaintiff Susanu underwent four weeks of intensive therapy consisting of ice packs, ultrasound, electrical stimulation, and "myofacial release"; plaintiff Mihalcea underwent treatment for a considerably longer period but received the same type of therapy. Their medical bills were sent to their attorney and remained unpaid as of the date of trial.

 Cross-examination is permitted on all relevant matters affecting credibility. See Evid.R. 611(B). To this end, a party may impeach a witness by showing bias or pecuniary interest. See Evid.R. 616(A). As always, however, evidence showing pecuniary interest is subject to scrutiny for undue prejudice under Evid.R. 403(A); see, generally, Oberlin v. Akron Gen. Med. Ctr. (2001), 91 Ohio St.3d 169, 171, 743 N.E.2d 890, 892–893. Undue prejudice is " 'that quality of evidence which might result in an improper basis for a jury decision.' " Id. at

---

1. The named defendant, Vivian Cliche, owned the car used by defendant Cruso, but was dismissed from the action prior to trial.

172, 743 N.E.2d at 893, quoting Weissenberger's Ohio Evidence (2000), 85–87, Section 403.3. "The scope of cross-examination of a medical expert on the questions of the expert's bias and pecuniary interest and the admissibility of evidence relating thereto are matters that rest in the sound discretion of the trial court." *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008, syllabus.

The personal injury bar has vigorously gone after defense bar medical experts in attempts to show that those witnesses are willing to bend their opinions in the direction from which their fees come. The most high-profile example in this appellate district is the saga of Robert Corn, M.D., a doctor whom certain trial lawyers believe to be biased because he earns "a substantial amount of income by performing examinations for the defense in personal-injury cases and acting as a defense witness * * *." *State ex rel. Corn v. Russo* (2001), 90 Ohio St.3d 551, 552, 740 N.E.2d 265, 267. Corn has been cited for criminal contempt for failing to produce income tax records and other documents that might establish his relationship with members of the personal injury defense bar. *Id.*

It should come as no surprise to the personal injury bar that the insurance defense bar would use the same tactics. Personal injury victims can have no complaint that their experts are being subjected to rigorous impeachment for bias and pecuniary interest when they have done the same to defense experts. Without making any judgments about the Cleveland Therapy Center, we have noted in several cases that attorneys for personal injury victims have referred their clients to the Cleveland Therapy Center well after those clients had ceased initial medical treatment. See, *e.g., Sawyer v. Duncan* (Dec. 14, 2000), Cuyahoga App. No. 78056, unreported, 2000 WL 1844758 (client referred to Cleveland Therapy Clinic fourteen months after receiving last medical treatment); *Woolley v. Farmer Jones Farms* (Oct. 19, 2000), Cuyahoga App. No. 77232, unreported, 2000 WL 1545040 (client referred to Cleveland Therapy Center four months after receiving last medical treatment); *Mustafa v. Heneghan* (Sept. 4, 1997), Cuyahoga App. No. 71607, unreported, 1997 WL 547840.

During a videotaped cross-examination of Dr. Kunkle, the treating physician from the Cleveland Therapy Center, defense counsel managed to make many important points about Cleveland Therapy Center's alleged practice of over-treating patients in order to inflate medical-treatment damages. Most damaging was a form solicitation letter from Cleveland Therapy Center to local attorneys. This letter contained the promise that Cleveland Therapy Center would be able to assist counsel in making larger claims for medical treatment, if the need arose. Other documents noted that Cleveland Therapy Center would bill counsel directly, would issue protection letters for counsel, and asked if counsel wished to be placed on Cleveland Therapy Center's ticket list for seats at sporting events.

■ These were all valid grounds for impeachment because they went directly to Cleveland Therapy Center's pecuniary interest in prolonging or over-treating patients for the sole purpose of inflating medical damages. The length of time transpiring after the accident and the rather intensive nature of the "therapy" given provide a more than sufficient basis for defense counsel's inquiries into a pecuniary relationship between the Cleveland Therapy Center and plaintiffs' attorneys. Although Dr. Kunkle insisted that he was an independent contractor with no knowledge of Cleveland Therapy Center's business practices, his knowledge of those business practices was fair game for impeachment, and the court did not err by denying the motion *in limine.*

■ The remaining question is whether the court abused its discretion by permitting the impeachment of the Cleveland Therapy Center because evidence of pecuniary bias was unduly prejudicial.

We are unable to assess the prejudicial impact of the impeachment testimony because plaintiffs failed to include a full trial transcript on appeal. In *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 220, 400 N.E.2d 384, 385 the Ohio Supreme Court stated:

"The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. See *State v. Skaggs* (1978), 53 Ohio St.2d 162 [7 O.O.3d 243, 372 N.E.2d 1355]. This principle is recognized in App. R. 9(B), which provides, in part, that ' * * * the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record * * *.' When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."

Defendant claims that he defended the issue of liability at trial, so without a transcript we are unable to determine whether the jury in fact had been unduly swayed by the impeachment, or whether it found for defendant only on the facts presented. Because plaintiffs failed to provide a full trial transcript, we must affirm. The assigned error is overruled.

*Judgment affirmed.*

PATRICIA A. BLACKMON and FRANK D. CELEBREZZE, JR., JJ., concur.