OPINION
Defendant-appellant, Douglas H. Funk, appeals from the November 2, 2000 judgment of the Franklin County Court of Common Pleas finding him guilty of aggravated arson, theft, and insurance fraud, and sentencing him to a five year community control sanction plus five hundred hours of community service, and ordering restitution in the amount of $13,424.99 to Nationwide Insurance Company. For the reasons that follow, we affirm.
This case arises as a result of two fires that occurred within a week of each other at appellant's home in Hilliard, Ohio. On Saturday morning, January 30, 1999, appellant prepared breakfast at home for his girlfriend and her children. He left the premises around 6:00 p.m. and did not return home until the next day. About noon on Sunday, appellant returned to his house, smelled smoke, and discovered soot damage. The fire appeared to have started on the stove where appellant had prepared breakfast the day before.
Appellant did not contact the fire department as the fire was extinguished. He did, however, contact Nationwide Insurance ("Nationwide") with whom he had a homeowner's policy. On February 1, 1999, appellant met with property claims adjuster Michael Chuvales. Chuvales took a recorded statement from appellant that day. In addition, Chuvales called in Arson Investigator, Richard Dropsey, to investigate the cause and origin of the fire, as the fire appeared to have started on the stove, and the stove was only three or four years old. Dropsey found aluminum alloy residue in the drip pan under one of the burners. A pan that had been on that burner was missing. He did not believe the fire had occurred from a malfunction of the stove.
Nationwide had a contract with Firecorps Restoration ("Firecorps"), a company that cleans and restores household furnishings and carpet after fires. On February 5, 1999, Carolyn Randall, general manager of Firecorps, met with appellant to walk through the house and determine what could be cleaned and restored after the fire. Ms. Randall determined that the items damaged by smoke could be cleaned. Appellant was concerned about eliminating the odor of smoke and strongly disagreed about Firecorps' ability to clean a loveseat, a chair, and the carpet. Appellant indicated that he did not want those items cleaned as he intended to replace them anyway.
Around 6:00 that same evening, February 5, 1999, the fire department was dispatched to appellant's home when appellant's next door neighbor spied smoke coming from appellant's house. Firefighters noticed a large amount of debris on the floor in the laundry room area where the fire appeared to originate. Firefighter Glen Durbin attempted to turn off the electrical breaker in case the fire was electrical, but he noticed the breaker was already in the "off" position. Fire Investigator Reginald Brown observed a "pour pattern" on the floor of the laundry room beneath an electrical outlet.
While the firefighters were at the scene, appellant was at a high school basketball game with his girlfriend. She received a page and learned that there had been another fire at appellant's home. Appellant returned home and found that the exterior of the house appeared intact, but the home had sustained more smoke and soot damage. Later that evening, appellant went to the Hilliard police department where he spoke to Detective John Wells and Fire Investigator Edward Roberts. Appellant denied storing gasoline in the laundry room area of the house.
On February 9, 1999, Dropsey returned to appellant's home to investigate the origin and cause of the second fire. He removed the breaker box from the wall and sent it to a lab for testing. The testing revealed that the breaker box was not defective. Dropsey also noticed the presence of pour patterns on the floor. After eliminating accidental sources of ignition, Dropsey concluded the February 5, 1999 fire was intentionally set.
On February 10, 1999, Mike Chuvales and Steve Kolcun from Nationwide took another recorded statement from appellant concerning the second fire. Appellant stated that he was in the house around 3:30 p.m. to pick up his mail and to vacuum out his car. Appellant stated that he was getting soot on his hands, so he decided not to vacuum out his car. Appellant stated that he then locked up and left about 3:45 p.m. to meet his girlfriend at a basketball game. When asked if he had any credit problems, appellant responded as follows:
 No, huh-uh. I, uh, filed bankruptcy last February. Uh, shoot, this is my only bill right here, $600. I don't have any, so I don't have none of that. I mean, I `ve b — — I mean, two years ago, you know, I could see me doing something like this. I was in bad shape about two years ago, but and I was robbing Peter to pay Paul. * * * [Tr. Vol. III, at 172.]
Later, in the same interview, appellant denied setting the fire or considering setting the fire. (Tr. Vol. III, at 173.)
On February 12, 1999, Carolyn Randall returned to appellant's home to assess the damage from the second fire and to see what could be cleaned. She observed that the slipcovers that had previously covered the furniture had been pulled back and there was more smoke and soot damage. Nevertheless, she still believed the furniture and carpet could be cleaned. Appellant, however, strongly disagreed that the furniture could be cleaned and asked about getting the items replaced.
On May 31, 2000, the Franklin County Grand Jury indicted appellant on two counts of aggravated arson, two counts of theft, and two counts of insurance fraud. Counts one, two, and three related to the January 30, 1999 fire, and counts four, five, and six related to the February 5, 1999 fire. After a jury trial, the jury found appellant not guilty on the first three counts relating to the first fire, but guilty on the three counts relating to the second fire. The trial court proceeded immediately to sentencing and sentenced appellant to a five-year period of community control, ordered him to maintain employment, perform five hundred hours of community service, participate in drug evaluation and aftercare, and pay restitution in the amount of $13,424.99 to Nationwide.
On appeal, appellant has assigned the following assignments of error:
First Assignment of Error
 The trial court erred in admitting expert opinion testimony when the record did not establish that the witness was qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony.
Second Assignment of Error
 The trial court erred in admitting expert opinion testimony that was not based upon scientifically valid, empirically verifiable principles.
Third Assignment of Error
 Appellant's convictions are not supported by sufficient credible evidence.
Fourth Assignment of Error
 The trial court committed reversible error and deprived Appellant of due process of law by entering judgments of conviction that were contrary to the manifest weight of the evidence.
Fifth Assignment of Error
 The trial court erred in ordering restitution in the absence of proof that Appellant's offense posed a threat of personal injury or death to another.
In his first assignment of error, appellant argues the trial court erred in qualifying Richard Dropsey as an expert witness in the field of arson investigation. Appellant points to Dropsey's graduation from high school with a general education diploma and failure to complete college. Appellant argues that many of the courses Dropsey completed such as bomb threat response, satanic cult crimes, and terrorist activities, were inapplicable to the instant case. With respect to the arson courses Dropsey did attend, appellant argues that Dropsey could not recall the specifics of those programs and that Dropsey was not certified as an arson investigator. Finally, appellant argues that Dropsey's certification and previous expert testimony as an expert in the field of fire investigation did not qualify him as an expert in arson investigation.
The state responds by noting Dropsey's extensive experience as a fire investigator. At the time of trial, Dropsey was employed by Crawford Investigative Services as a fire investigator. Prior to that, Dropsey had been working as a fire investigator for three years for Unified Investigations and Sciences. Before that, Dropsey had worked for SEA Incorporated for three years as a fire investigator. From 1986 to 1993, he had worked in the Charleston, South Carolina area working his way through the ranks as a fire investigator, captain of the fire department, assistant fire marshall, and head of the fire investigation division. Prior to 1986, Dropsey worked as a fire investigator and inspector in Mansfield, Ohio. Since 1981, Dropsey had investigated approximately seven hundred and fifty fires. In 1995 and 1999, he attended the Ohio Arson School. In 1997, he attended a course in accidental fires and subrogation. In 1995, he attended advanced insurance fraud seminars. He also took courses in arson detection and a seminar on incendiary devices and bombs. Dropsey has lectured on fire investigation in three states and has taught college level classes in South Carolina on fire inspection and investigation. He is a member of the International Association of Arson Investigators and the Ohio Chapter of Arson Investigators. He was previously classified as an expert witness in the field of arson investigation in a criminal trial in Madison County.
The admission or exclusion of expert testimony rests within the sound discretion of the trial court. Calderon v. Sharkey (1982),70 Ohio St.2d 218, syllabus. Evid.R. 702 governs the admission of expert testimony and reads:
 A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *
Therefore, only when a trial court's inclusion or exclusion of evidence amounts to a clear and prejudicial abuse of discretion will the court's ruling be overturned on appeal. Id. at 222. A trial court abuses its discretion when its attitude is unreasonable, arbitrary, or unconscionable. Id. at 219-220.
"Qualifications which may satisfy the requirements of Evid.R. 702 are multitudinous." State v. Mack (1995), 73 Ohio St.3d 502, 511. The Ohio Supreme Court has held that there is no "degree" requirement, per se. Id. Professional experience and training in a particular field may be sufficient to qualify one as an expert. Id., citing State v. Beuke (1988), 38 Ohio St.3d 29, 43. Here, Dropsey's extensive knowledge, experience, training, and education as a fire and arson investigator was sufficient to qualify him as an expert in the field of arson investigation. The trial court did not abuse its discretion by allowing the expert testimony as to the cause and origin of the fire. The first assignment of error is not well-taken and is overruled.
In his second assignment of error, appellant contends the trial court erred in admitting Dropsey's expert opinion testimony that the fire was the result of an intentional human act. Appellant argues that Dropsey's expert opinion was not based on a reliable methodology or scientifically valid principles. Appellant contends that, pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993), 509 U.S. 579, the trial court should have excluded the testimony as speculative.
In the Daubert case, the Ohio Supreme Court was called upon to determine the standard for admitting expert scientific testimony in a federal trial. The Ohio Supreme Court set forth certain guidelines to assist the trial court in determining whether such evidence is based on scientific knowledge. However, the Daubert case did not create a per se rule of admissibility. The admissibility of evidence remains within the sound discretion of the trial court. A review of the record in the present case indicates that defense counsel at no time objected to Dropsey's testimony that the cause and origin of the fire was an intentional human act. Defense counsel did not raise any objection to Dropsey's observations, nor did defense counsel object to testimony that, in reaching his conclusion, Dropsey eliminated accidental sources of ignition for the second fire. In sum, defense counsel never argued to the trial court that Dropsey's investigation into the cause and origin of the fire was unreliable and should not be admitted. As such, we review appellant's second assignment of error for plain error.
To constitute plain error, the error must be obvious on the record, palpable, and fundamental such that it should have been apparent to the trial court without objection. See State v. Tichon (1995),102 Ohio App.3d 758, 767. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996), 75 Ohio St.3d 163, 166. Notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83; State v. Ospina (1992),81 Ohio App.3d 644, 647.
Here, appellant's concerns about Dropsey's testimony go more to the weight of the evidence rather than to its admissibility. Appellant challenges Dropsey's failure to interview the person who called in the fire, his failure to interview the firefighters, and his failure to investigate reports of vandalism in the area. Appellant contends that Dropsey failed to determine the presence of accelerants, take samples, or test them. These alleged inadequacies in Dropsey's investigation are insufficient to render his testimony so unreliable as to be stricken by the trial court. Appellant's second assignment of error is not well-taken and is overruled.
In his third assignment of error, appellant challenges the sufficiency of the evidence. Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, syllabus paragraph two, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, supra, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. See Thompkins, supra, at 387.
Here, appellant argues that without Dropsey's testimony, there was insufficient evidence to establish appellant's guilt, and even if his testimony were admissible, Dropsey merely stacked inference upon inference to reach the conclusion that appellant intentionally set the fire. Appellant contends that Dropsey inferred from the presence of pour patterns that an accelerant must have been used. From there he inferred that the accelerant must have been there as a result of criminal conduct, and from there infers that appellant was the offender.
We do not find that Dropsey's expert opinion was the result of impermissible stacking of inferences. Rather, his conclusions were based upon his investigation, his observations and, in part, upon the systematic exclusion of other possible causes for the fire. Where there are several possible explanations, elimination of other possibilities necessarily acts as proof of the remaining possibility. Donaldson v. N. Trading Co. (1992), 82 Ohio App.3d 476, 482. The breaker box and electrical malfunctions were eliminated as sources for the fire. Appellant denied storing gasoline or other flammable liquids in the laundry room where the fire started, yet pour patterns appeared on the floor where the fire started. Appellant was present in the home immediately prior to the time the fire started. Appellant stated that he had locked up his house before leaving, and the firefighters had to gain entry by force. Appellant had expressed extreme displeasure when he found out the smoke damage from the first fire was not extensive enough to allow him to receive replacement furniture and carpet. At the time of the second fire, the slipcovers had been pulled back from the furniture causing more extensive smoke damage. Because of the nature of the crime, proof of arson must often rely heavily upon circumstantial evidence and the inferences one may draw from such evidence. State v. Webb (June 25, 1998), Cuyahoga App. No. 72588, unreported. Motive and opportunity are facts that can weigh heavily in establishing arson. Id. In this case, we find that the state presented sufficient evidence to support the conviction for arson. The third assignment of error is not well-taken and is overruled.
In his fourth assignment of error, appellant challenges the weight of the evidence against him. Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, the court may nevertheless conclude that the judgment is against the manifest weight of the evidence. Thompkins, supra, at 387. In so doing, the court of appeals, sits as a "`thirteenth juror'" and, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. (quoting State v. Martin [1983], 20 Ohio App.3d 172, 175); see, also, Columbus v. Henry (1995),105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, supra, at 387.
Appellant lists a number of factors that he believes weigh against his conviction:
He was renovating the residence at the time of the fire;
He was not present at the time of the fire;
He had recently been discharged in bankruptcy;
The fire had a single point of origin;
The fire was confined to a small area;
 Investigators found no ignition device and no accelerants.
While one can certainly draw the inferences appellant wishes us to draw from these facts, other inferences that can be drawn from these facts and other evidence that was before the jury weigh heavily in favor of conviction. Appellant was not home at the time the fire was called in, but he had been home shortly before that. Appellant was angry when he was told after the first fire that his furniture and carpet could be cleaned. While appellant's recent discharge in bankruptcy left him with few bills, he also had little credit with which to purchase new furniture. The slipcovers were pulled back from the furniture before the second fire even though appellant had not been staying there, and even though the representative from Firecorps had put them back in place after determining the furniture could be cleaned. Pour patterns were found at the scene of the second fire, indicating that an accelerant had been used. Electrical malfunctions were eliminated as causes of the fire. Finally, appellant made misleading and confusing statements to Nationwide employees about his financial condition and that he needed $130,000. After reviewing the entire record, we do not believe the jury lost its way when it found appellant guilty of starting the second fire. The fourth assignment of error is not well-taken and is overruled.
In his fifth assignment of error, appellant argues the trial court erred in imposing restitution. Under the sentencing statutes in effect at the time appellant committed his crimes, the trial court was without authority to impose restitution unless appellant's conduct posed a "substantial threat of personal injury." R.C. 2743.51(C). State v. Hooks (2000), 135 Ohio App.3d 746, 750; State v. Kimmle (Dec. 21, 1999), Franklin App. No. 99AP-435, unreported. Appellant argues that in the present case there is no evidence to suggest that appellant's conduct created a substantial risk of personal injury or death. We disagree.
In State v. Zwiebel (Aug. 29, 2000), Franklin App. No. 00AP-61, unreported, the defendant set fire to a bowling alley where he was employed. Between two and three hundred children were in the building at the time of the fire, but all escaped unharmed. The defendant was acquitted of two counts of first-degree arson, but convicted of one count of second-degree arson. On appeal, the defendant argued that his acquittal on the first-degree arson charges mandated a reversal of the trial court's order of restitution. This court disagreed holding that setting fire to a building occupied by several hundred people was sufficient to establish a substantial threat of personal injury. Id.
Here, the evidence at trial established that appellant set the second fire to his own house and then left the area. Although appellant's house was unoccupied at the time of the fire, firefighters had to be dispatched to extinguish the fire. By leaving the premises, appellant created a substantial threat of personal injury as appellant had no way of knowing whether the fire would spread to other structures or whether a firefighter would be injured or killed while extinguishing the blaze. As this court noted in Zweibel, the burden of proof for sentencing purposes is a preponderance of the evidence, not proof beyond a reasonable doubt. Thus, there was evidence before the trial court from which it could conclude that appellant's conduct posed a substantial threat of personal injury. Appellant's fifth assignment of error is not well-taken and is overruled.
Based on the foregoing, appellant's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
DESHLER and KENNEDY, JJ., concur.