[Cite as *Vanadia v. Hansen Restoration, Inc.*, 2014-Ohio-4092.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 101033**

---

# ANTHONY VANADIA, ET AL.

PLAINTIFFS-APPELLEES

vs.

# HANSEN RESTORATION, INC.

DEFENDANT-APPELLANT

---

## JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-790777

**BEFORE:** Celebrezze, P.J., S. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** September 18, 2014

**ATTORNEY FOR APPELLANT**

Kristen E. Campbell
Pelini, Campbell & Williams, L.L.C.
Bretton Commons, Suite 400
8040 Cleveland Avenue, N.W.
North Canton, Ohio   44720


**ATTORNEY FOR APPELLEES**

David Lavey
8748 Brecksville Road
Suite 218
Brecksville, Ohio   44141

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Appellant, Hansen Restoration, Inc. ("Hansen"), appeals from a judgment in favor of appellees, Anthony and Jana Vanadia, for a claim of negligent performance of work in the remodeling of the Vanadias' house after a fire. Hansen raises five assignments of error related to jury interrogatories, disallowance of some testimony and the allowance of other testimony, the award of prejudgment interest, and the taxing of costs to Hansen. After a thorough review of the record and law, we affirm.

## I.   Factual and Procedural History

{¶2} The Vanadias purchased a property in Brecksville, Ohio, in 2004. Anthony Vanadia ("Vanadia"), an experienced construction worker with his own concrete contracting business, began remodeling a house located on the property sometime in 2007. As part of a project to open up the floor plan, Vanadia, along with several other people, installed an engineered wood beam, referred to as a laminated veneer lumber ("LVL") beam, under the ridge board that ran the length of a room referred to as the "great room." The roof rafters were attached to the existing ridge board and were notched out to accommodate the larger LVL beam running beneath the ridge board. Vanadia testified the beam was installed with collar ties and ceiling ties in the process of creating a cathedral ceiling. Following the installation, the roof was reshingled and the house remodel was completed.

{¶3} In late 2008, while family friends were living in the house, a fire spread from the chimney of the fireplace in the great room to the ceiling and the immediate

surroundings. The fire was contained to a small area, but the fire department had to cut holes in the roof and ceiling to extinguish it. Vanadia contacted his insurance carrier, Allstate Insurance, and an adjuster arrived to survey the damage. The adjuster generated a list of repairs necessary to restore the house to its pre-loss condition. A company specializing in cleaning smoke damage was dispatched to the house to clean and dry portions of the house affected by water and soot. A representative of that company recommended Hansen to Vanadia for the repair work.

{¶4} Vanadia contacted Hansen, as well as other contractors, to get price quotes using the damage estimate provided by Allstate for the scope of work. Hansen was able to start work right away, so the Vanadias signed a single-page agreement with the Allstate estimate attached to outline the scope of work. The Vanadias paid additional money for extra work not covered under the insurance policy. The scope of work called for, among other things, the replacement of six roof rafters that had been damaged in the fire and repairs to the roof.

{¶5} The contract also called for repairs to interior portions of the house that were damaged by fire. The contract price totaled $19,842. Hansen hired another contractor, Renovation Homes, Inc. ("Renovation"), to perform much of the work. Robert Root, the owner of Renovation, testified that he was contracted by Hansen to repair the rafters, roof, and the interior of the great room.

{¶6} The repairs were made, and Vanadia and a Hansen representative met to discuss the quality of work in some areas. The fireplace brick was not done to Vanadia's

standards and was redone by Hansen. A roof leak was also fixed within a few weeks of completion. The final payment of $4,842 had not been made, and a Hansen representative again went to the house in the early spring of 2009 to discuss another issue. Vanadia pointed out that a sag had developed in the roof in the area where Hansen had replaced the roof rafters. This deflection was apparent from the ground. The parties arranged for an Allstate representative to investigate the work and determine if the deflection was covered under the homeowner insurance policy. Allstate denied any additional coverage. Hansen asserted that the deflection had predated its work and that the LVL beam Vanadia installed was the cause of the sag.

{¶7} The Vanadias filed suit against Hansen on September 5, 2012, claiming Hansen breached the home remodeling contract and negligently performed work on the house. Hansen counterclaimed for the balance due under the contract. Both sides submitted expert reports during discovery, and depositions were taken. A four-day jury trial started on October 23, 2013. Vanadia testified that after he installed the LVL beam, the roof was straight and no sag existed prior to the fire. He also testified that shortly after Hansen completed its work, a sag developed. On closer inspection, he saw that the rafters installed by Hansen were miscut and installed improperly. The Vanadias' expert, Marco Vovk, a licensed home inspector, testified that he observed that the new rafters were installed improperly. At least one was nailed improperly, and several were improperly cut so that the ends were not flush against the ridge board or LVL beam. Tori Corbo, owner of Complete Renovations, testified that curing the roof deflection

would cost $39,261 and would take four to five weeks. Vanadia also testified that a hotel stay for the duration of the work was required and would cost approximately $7,000.

{¶8} Hansen relied on the testimony of Scott Osowski, the structural engineer sent by Allstate in 2009 to analyze the cause of the roof deflection. He was prohibited from testifying as an expert, but testified as a fact witness. In a proffer after Osowski completed his testimony, Hansen attempted to explain that Osowski should be allowed to testify that the work performed by Hansen was done in a workmanlike manner. However, Richard Kraly, an architect who testified as an expert on Hansen's behalf, opined that the work performed by Hansen was done within industry standards and did not cause the roof deflection. His opinion was that the LVL beam was undersized and that caused the roof to sag. Kraly testified that, based on photographs taken just after the fire but prior to the start of reconstruction, the roof deflection predated Hansen's work. Eric Hansen, part-owner of Hansen, testified that the Vanadias still owed $4,842 on the contract, with interest at the rate specified in the contract, for a total of $11,315.88.

{¶9} The jury found that Hansen did not breach the contract, but negligently performed the work under the contract. It awarded the Vanadias $44,261 in damages. The jury also found that the Vanadias breached the contract by failing to pay the remaining balance. The jury awarded Hansen $4,482. The Vanadias filed post-trial motions that sought to tax certain costs to Hansen and for prejudgment interest. Hansen filed a motion for a new trial.

**{¶10}** On January 14, 2014, the trial court conducted a hearing on these motions after receiving briefs. On January 31, 2014, the court granted the Vanadias' motions to tax certain expert costs to Hansen and for prejudgment interest. The court denied Hansen's motion for a new trial the same day. This appeal followed where Hansen raises five errors:

> I. The trial court erred in denying appellant's right to submit narrative interrogatories to address appellees' multiple allegations of negligence.
>
> II. The trial court erred in denying appellant the ability to admit testimony of a qualified witness as to the standard of care.
>
> III. The trial court erred in allowing appellees to present surprise testimony from an expert witness.
>
> IV. The trial court erred in awarding appellees pre-judgment interest when appellees did not prove any of the factors required for such an award.
>
> V. The trial court erred in granting appellee's motion to tax costs.

## II. Law and Analysis

## A. Multiple Theories

**{¶11}** In its first assignment of error, Hansen argues that the trial court erred in failing to supply narrative interrogatories to the jury where the Vanadias were claiming multiple theories of negligence.

**{¶12}** Civ.R. 49(B) provides:

> The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the

jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law.

This rule puts the onus on the parties to submit proper jury interrogatories to the trial court and instructs the court to give those interrogatories unless they are improper. *Freeman v. Norfolk & W. Ry.*, 69 Ohio St.3d 611, 614, 635 N.E.2d 310 (1994). "Although the interests of justice and efficiency may make it a wise course of action, Civ.R. 49 does not obligate a trial court to actively assist a party in reformulating improper interrogatories. The court's duty is merely to submit proper interrogatories and to reject them only for a proper reason." *Id.* This court reviews the trial court's rejection of an interrogatory for an abuse of discretion. *Id.* To constitute an abuse of discretion, the ruling must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶13} Hansen asserts that the theory of improperly fastened rafters and improperly cut rafters are two separate theories of negligence that made the narrative interrogatory appropriate in this case.

{¶14} The holding in *Moretz v. Muakkassa,* 137 Ohio St.3d 171, 2013-Ohio-4656, 998 N.E.2d 479, a case relied on by Hansen for support, is that "[t]he trial court abused its discretion when it refused to submit to the jury a properly drafted interrogatory" submitted by a physician defendant. *Id.* at 188. However, this must be contrasted with the court's earlier holding that "the court retains limited discretion to reject submission of the interrogatories where the request is untimely or the proposed interrogatories are

ambiguous, confusing, redundant, or otherwise legally objectionable." *Ramage v. Cent. Ohio Emergency Servs., Inc*., 64 Ohio St.3d 97, 107, 592 N.E.2d 828 (1992).

{¶15} Here, Hansen submitted no interrogatories on negligence. Close to the end of trial, Hansen sought to have the trial court give a narrative instruction, but never provided the instruction to the court or made more than an amorphous argument about what that instruction should state. The court does not err in rejecting an interrogatory that was never properly submitted. This record is insufficient to demonstrate that the trial court abused its limited discretion in rejecting an instruction that was not proffered or, even if it was proffered, was untimely.

{¶16} Appellant's first assignment of error is overruled.

## B. Testimony

{¶17} Hansen raises two errors that take issue with the inclusion or exclusion of testimony of various witnesses. First, Hansen claims that the trial court erred in excluding a portion of the testimony of its witness Scott Osowski. Osowski is an engineer who was hired by Allstate to examine the roof of the Vanadias' house and determine the cause of its deflection. According to Hansen's proffer, made after Osowski testified, he was prepared to testify as a fact witness that Hansen's work was performed according to industry standards. For reasons unclear in the record, Osowski did not testify as an expert witness. Hansen wished to have Osowski testify that, based on his training and experience, the work performed by Hansen was done in a workmanlike manner.

{¶18} The opinion testimony of lay witnesses is governed by Evid.R. 701. "A trial court has broad discretion in admitting or excluding evidence, however, and absent an abuse of discretion and a showing of material prejudice, a trial court's ruling on the admissibility of evidence will be upheld." *In re S.H.*, 8th Dist. Cuyahoga Nos. 97992, 97993, and 97994, 2012-Ohio-4064, ¶ 13, citing *In re J.T.*, 8th Dist. Cuyahoga Nos. 93240 and 93241, 2009-Ohio-6224, ¶ 67, citing *State v. Martin*, 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (1985).

{¶19} Hansen relies on *Schneble v. Stark*, 12th Dist. Warren Nos. CA2011-06-063 and CA2011-06-064, 2012-Ohio-3130, for support. There, an interior designer hired by a homeowner as a general contractor was allowed to testify that the work performed by a different contractor on the job was done in a workmanlike manner. The *Schneble* court held that the interior designer was qualified to testify as an expert witness, but, even if she was not, she could still testify as a fact witness based on her observations. *Id*. at ¶ 23-24. This dicta does not limit the trial court's discretion in the present case to exclude the testimony of a witness that relies on the training and experience of that witness to testify about an industry standard of care when the same testimony is provided by an additional witness qualified as an expert.

{¶20} Here, Kraly, testifying as an expert, opined that the work performed by Hansen was done in a workmanlike manner and did not cause the roof deflection. Even if Osowski's testimony was admissible as lay witness opinion testimony, that does not mean the trial court abused its discretion by excluding it. Kraly offered substantially the

same testimony on the quality of the work performed by Hansen and further opined that the beam installed by Vanadia was undersized, and that caused the roof support system to fail. [1]   Evid.R. 403(B) grants the trial court discretion to limit questioning if the "probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."  *Calderon v. Sharkey*, 70 Ohio St.2d 218, 222, 436 N.E.2d 1008 (1982).   The exclusion of Osowski's proposed duplicative testimony, more akin to expert witness testimony, does not amount to reversible error in this case.

{¶21} Even more basic and determinative, Hansen argues the objection to Osowski's testimony was sustained because the proposed testimony embraced an ultimate issue in the case.  However, the trial court, in sustaining an objection during Root's testimony, indicated that *Root*, not Osowski, would not be allowed to testify about the standard of care in the industry and whether Hansen's work, work that was performed by Root, lived up to that standard.   Hansen never attempted to have Osowski, who testified after Root, testify about whether Hansen's work met any industry standard of care. Hansen's proffer, made after Osowski's testimony ended, did include such an argument, but no questions were put to Osowski about whether Hansen's work was performed in a workmanlike manner.   The proffer mainly focused on the fact that Osowski was not allowed to testify as an expert witness.   The trial court cannot err in deciding an issue related to Evid.R. 701 that was not raised during Osowski's testimony.

---

[1] This was part of Hansen's proffer to the trial court, but was not argued on appeal.

**{¶22}** Hansen next argues that the trial court erred in allowing the testimony of the Vanadias' expert, Marco Vovk, where his testimony at trial conflicted with that given in his deposition and expert report. The record contains neither his report nor deposition. Therefore, it is impossible for this court to properly analyze this error on appeal.

**{¶23}** Hansen filed a motion in limine on August 21, 2013, to exclude or limit the testimony of Vovk. The motion argued that Vovk did not seasonably update his expert report after receiving additional photographs from Vanadia and conducting an additional inspection. Hansen argued that all of the photographs on which his opinion was based were not attached to the expert report. Hansen also claimed that the supplemental report was untimely submitted even though it was tendered on August 9, 2013, more than 30 days from the September 11, 2013 trial date. However, the trial date was continued to October, making timeliness arguments moot. Hansen also did not attach the deposition or report to its motion in limine, leaving the trial court with little evidence to support the argument that testimony should be excluded.

**{¶24}** All the evidence on which Vovk's expert opinion was based was admitted into evidence, satisfying Evid.R. 703 and 705. It is impossible for this court to review a change in testimony from deposition to trial or testimony that is not contained within the expert report without the report or deposition testimony. Therefore, this court must presume that the trial court's ruling on this issue was appropriate.

**{¶25}** Appellant's second and third assignments of error are overruled.

## C. Prejudgment Interest

**{¶26}** In its fourth assignment of error, Hansen argues that the trial court erred in awarding the Vanadias prejudgment interest. The trial court found that Hansen failed to engage in good-faith settlement negotiations and awarded three percent interest from the date the complaint was filed to the date of judgment.

**{¶27}** R.C. 1343.03 allows for the award of prejudgment interest under certain circumstances. R.C. 1343.03(C) provides:

> If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case[.]

**{¶28}** This court reviews the trial court's determination for an abuse of discretion. *Pruszynski v. Reeves*, 117 Ohio St.3d 92, 2008-Ohio-510, 881 N.E.2d 1230, ¶ 11. The Ohio Supreme Court has further held:

> Although the court may rely in part on its own participation during the
> pretrial and trial proceedings to aid in its ruling on the motion, *Galmish v.*
> *Cicchini* (2000), 90 Ohio St.3d 22, 34, 2000-Ohio-7, 734 N.E.2d 782, the
> parties have the right to a date certain for an evidentiary hearing. The trial
> court, however, has the discretion to determine the nature of the evidentiary
> hearing to be held, as it is in the best position to select the kind of evidence

necessary to make the findings required by R.C. 1343.03(C) and determine

whether an award of prejudgment interest is proper.

*Id*. at ¶ 12.

**{¶29}** Here, the trial court held a hearing on the motion. It heard arguments from both parties about the pretrial negotiations that took place. The Vanadias explained that they made an offer to settle for $32,000, and Hansen responded by offering to dismiss its counterclaim if the Vanadias did likewise. Hansen never offered any settlement amount over the dismissal of the counterclaim. Based on the lack of any offer to settle above that, the court found that Hansen had not engaged in good-faith settlement negotiations. That decision was not arbitrary, unreasonable, or unconscionable.

**{¶30}** Appellant's fourth assignment of error is overruled.

### D. Costs of Expert Deposition Transcript

**{¶31}** Hansen argues in its fifth assignment of error that the trial court erred in awarding $815 in costs to the Vanadias for the deposition transcript of Hansen's expert witness, Kraly.

**{¶32}** Civ.R. 54(D) governs the award of costs and provides, "[e]xcept when express provision therefore is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." A "decision to award or decline to award costs is within the sound discretion of the trial court. Therefore, such a decision will not be disturbed on appeal absent an abuse of that discretion." *Holmes*

*Cty. Bd. of Commrs. v. McDowell*, 169 Ohio App.3d 120, 2006-Ohio-5017, 862 N.E.2d 136, ¶ 43 (5th Dist.).

**{¶33}** The Ohio Supreme Court has limited what may be considered costs and awarded to a successful plaintiff. *Centennial Ins. Co. v. Liberty Mut. Ins. Co.*, 69 Ohio St.2d 50, 430 N.E.2d 925 (1982). "Costs are generally defined as the statutory fees to which officers, witnesses, jurors and others are entitled for their services in an action and which the statutes authorize to be taxed and included in the judgment." *Benda v. Fana*, 10 Ohio St.2d 259, 227 N.E.2d 197 (1967), paragraph one of the syllabus. This court has set forth the appropriate evidentiary standard:

> [T]he prevailing party has the burden of establishing that the expenses it seeks to have taxed as costs are authorized by applicable law. Once the court determines that an allowable cost is established, the burden rests upon the objecting party to overcome the presumption favoring an award of costs to the prevailing party.

(Citations omitted.) *Naples v. Kinczel*, 8th Dist. Cuyahoga No. 89138, 2007-Ohio-4851, ¶ 6.

**{¶34}** The costs for video deposition and use are specifically addressed in Sup.R. 13(D). While this rule generally allows the expense of recording testimony, editing and playing the recording at trial, and playing the recording for the purpose of ruling on objections to be taxed as costs, Sup.R. 13(A)(6) provides that the expense of a transcript of the deposition shall be borne by the requesting party. Therefore, this rule does not specifically allow the cost of the expense of a transcript of a videotaped deposition to be taxed as costs in favor of a prevailing party.

**{¶35}** However, R.C. 2303.21 provides that,

> [w]hen it is necessary in an appeal, or other civil action to procure a transcript of a judgment or proceeding, or exemplification of a record, as evidence in such action or for any other purpose, the expense of procuring such transcript or exemplification shall be taxed in the bill of costs and recovered as in other cases.

When the cost of the transcript is necessary, R.C. 2303.21 has been held to apply when the associated costs have been taxed. *Naples* at ¶ 13, citing *Brodess v. Bagent*, 10th Dist. Franklin No. 04AP-623, 2005-Ohio-20.

**{¶36}** In the present case, the Vanadias argued to the trial court that they were required to purchase the transcript of the deposition in order to properly raise and argue objections to Kraly's testimony and to prepare for its use at trial because Hansen planned to use Kraly's videotaped deposition at trial in lieu of live testimony. This made the transcript necessary for the Vanadias and the trial court to properly rule on those objections.

**{¶37}** Items used purely for trial preparation are a personal expense not properly taxed as costs. "Personal expenses * * * are those expenses expended by a party in preparing a case for trial." *Jones v. Pierson*, 2 Ohio App.3d 447, 449, 442 N.E.2d 791 (8th Dist.1981), citing *Pope v. Pollock*, 46 Ohio St. 367, 21 N.E. 356 (1889). Therefore, the Vanadias' argument that the transcript was necessary for trial preparation is not availing. However, in order to properly raise and preserve objections to recorded testimony intended to be used at trial, those objections must be raised and brought to the

court's attention prior to trial. This means the transcript was necessary for the Vanadias and the trial court to properly rule on those objections.

{¶38} The fact that Kraly's videotaped deposition was not used at trial is not important. Kraly ultimately did testify at trial in person, but due to the closeness in time between Kraly's deposition taken on September 6, 2013, and the September 11, 2013 trial date, the Vanadias were forced to purchase the transcript before the trial court entered the order continuing trial due to a court scheduling conflict. *See Kinn v. HCR ManorCare*, 6th Dist. Lucas No. L-13-1016, 2013-Ohio-4085.

{¶39} The Vanadias also submitted proper documentation of the cost of the transcript provided by the transcribing service. The Vanadias demonstrated that this was a reasonable expense necessary to preserve objections for trial. Therefore, the trial court did not abuse its discretion in awarding the costs of the transcript as costs in the action.

{¶40} Appellant's fifth assignment of error is overruled.

### III.  Conclusion

{¶41} The trial court did not err in failing to give a narrative interrogatory when one was not properly submitted to it. The court also did not abuse its discretion when it allowed expert testimony from Vovk and excluded the opinion testimony of Osowski. Hansen failed to properly create a record to preserve these assigned errors on appeal. Finally, the trial court did not err in granting the Vanadias' motions for prejudgment interest and costs.

{¶42} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
PATRICIA A. BLACKMON, J., CONCUR