OPINION
{¶ 1} Plaintiff Judith M. Haldeman appeals a summary judgment of the Court of Common Pleas of Delaware County, Ohio, entered in favor of defendants, Cross Enterprises, Inc. dba Alum Creek R.V. Marina Alum Creek R.V., Inc. dba Alum Creek R.V. Marina. Appellant's brief contains a narrative statement of the assignments of error presented for review:
 {¶ 2} "The trial court committed reversible error in granting defendants-appellees' motion for summary judgment. The trial court erred in failing to recognize that there was no admissible evidence to support the conclusion that cross enterprises, Inc., met the requirements for immunity under R.C. 4123.35. at the time of his death, plaintiff-appellant's decedent, Terry Haldeman, was neither an employee nor a loaned servant to cross enterprises, Inc., nor was he subject to the its direction and control. Instead, the evidence before the trial court was that Terry Haldeman was employed by alum creek R.V., Inc., and was in the course and scope of his employment with Alum Creek at the time of his death. Therefore, even if cross enterprises, Inc. met the elements of R.C. 4123.35, it was not entitled to immunity in this case.
 {¶ 3} "The trial court also committed reversible error in applying the workplace intentional tort standard on the issue of liability, and failing to recognize that genuine issues of material fact existed such that summary judgment should have been denied.
 {¶ 4} "The trial court committed reversible error in granting defendants-appellees' motion to strike the exhibits, which plaintiff-appellant had attached to their brief in opposition to defendants' motion for summary judgment."
 {¶ 5} Appellant's statement pursuant to Loc. App. R. 9 alleges the case presents genuine issues of material fact, such that summary judgment was inappropriate.
 {¶ 6} Steven W. Cross owns various corporations as the sole stockholder. Appellee Alum Creek R.V., Inc. maintains a retail store selling and repairing boats and R.V.'s. The State of Ohio is the owner of Alum Creek Marina, but appellee Cross Enterprises, Inc. has a contract with the State to operate and manage the Marina as a concessionaire. Part of the operation of the Marina includes rental and charter of three boats owned by Alum Creek R.V.
 {¶ 7} On November 16, 2000, plaintiff's decedent, Terry Lee Haldeman, drowned while he and another man were attempting to remove one of the charter boats, a forty foot pontoon boat, from the water at Alum Creek Marina. The co-worker, Daniel Ward, worked for another of Cross' corporations, Deer Creek Marina. Like the Alum Creek Marina, Deer Creek Marina is owned by the State of Ohio, but has a contract with Cross' company to serve as concessionaire. In addition, Cross had other similar businesses.
 {¶ 8} At the conclusion of each boating season, appellees' pontoon boats had to be removed from Alum Creek for storage. Removal of the boats was part of Haldeman's employment responsibility, and he had done so on numerous occasions. Haldeman would back a custom-built tractor-trailer down a concrete boat ramp and a co-worker, on this occasion Mr. Ward, would drive the pontoon boat onto the trailer. The boat would be secured to the trailer and removed.
 {¶ 9} On this occasion, there were "low-water conditions". This meant the water line of Alum Creek Lake was at or near the edge of the concrete at the bottom of the boat ramp. In order to extract the boat in low water conditions, Haldeman would back the tractor-trailer down the boat ramp and into Alum Creek water. The rear most section of the trailer would be past the end of the concrete ramp and onto the natural basin of the lake. On the day in question, the trailer apparently sank into the soft sediment of the underwater shoreline. It slid into the lake waters, dragging the tractor-trailer with Haldeman in it. Haldeman escaped from the truck, but was unable to swim to safety in the cold water.
 {¶ 10} The boat trailer in use on the day decedent drowned, had been custom made by an employee of Steven Cross. It was constructed entirely of steel I-beams, 43 feet long, 8 feet wide, and weighing over 6,000 pounds. Appellee Alum Creek R.V. owned the tractor-trailer.
 {¶ 11} At the time of his death, Terry Haldeman was general manager of Alum Creek R.V. He was covered for Workers' Compensation by Alum Creek. Both Haldeman and Ward were salaried, and worked variable hours, more in the summer time and less in the winter time. Haldeman was not listed as an employer-manager of any of Steven Cross' other business enterprises. Steven Cross testified, however, Haldeman would help with the other enterprises and acted as Cross' right-hand person. Cross testified they did not keep separate time records or payroll sheets for the work done for the various other enterprises, although they considered him somewhat of an interchangeable employee amongst the various operations. Although Daniel Ward was the manager of Deer Creek Marina, Terry Haldeman was in charge of everybody in Cross' various enterprises, and Daniel Ward was under the direction of Terry Haldeman the day in question. Neither Terry Haldeman nor Daniel Ward would be paid by Cross Enterprises, and Cross Enterprises would not reimburse Alum Creek or Deer Creek for the work the men did in extracting the boat. After Terry Haldeman drowned, Steven Cross filed a Workers' Compensation claim and appellant received an award. The claim was made under Cross Enterprises.
 {¶ 12} Civ. R. 56 (C) states:
 {¶ 13} Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
 {¶ 14} The trial court's judgment entry of January 9, 2004, sets forth its standard of review. Pursuant to the rule, the moving party bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record showing there is no dispute as to a material fact,Dresher v. Burt (1996), 75 Ohio St. 3d 280. The moving party may not simply assert the non-moving party has no evidence to prove its case, but must produce evidence as listed in the rule to demonstrate the non-moving party cannot support its claims,Vahila v. Hall (1997), 77 Ohio St. 3d 421.
 {¶ 15} Once the moving party has satisfied its burden, the burden shifts to the non-moving party set forth specific facts which demonstrate there is a genuine issue of material fact for trial, Vahila at 429. If the non-moving party does not set forth evidentiary quality materials showing there is a genuine issue for trial, then the trial court may enter summary judgment, if appropriate.
 {¶ 16} A trial court may not resolve any ambiguities in the evidence presented, Inland Refuse Transfer Company vs.Browning-Ferris Industries of Ohio (1984), 15 Ohio St. 3d 321. Summary judgment is not appropriate if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from undisputed facts, Hounshell v. American States Insurance Company (1981),67 Ohio St. 2d 427.
 {¶ 17} This court reviews a summary judgment using the same standard as the trial court, Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St. 3d 35.
 {¶ 18} Appellant alleged claims of negligence and employer intentional tort. The trial court found in Ohio the Workers' Compensation Act bars an employee from bringing suit against his or her employer for injuries suffered during the employment relationship, see R.C. 4123.74. The trial court found Alum Creek R.V. employed Haldeman, but at the time of the accident, Haldeman was performing work for Cross Enterprises. The trial court does not elaborate on this finding, but the court did find, incorrectly, that Cross Enterprises owned the pontoon boat the men were attempting to remove when Haldeman was killed.
 {¶ 19} Appellant urges Haldeman was not an employee of Cross Enterprises, because he was employed by Alum Creek R.V. and was in the course and scope of his employment with Alum Creek at the time of his death. Appellant urges Terry Haldeman was not a loaned servant to Cross Enterprises, nor was he subject to its direction and control.
 {¶ 20} In Halkias v. Wilkoff Company (1943),141 Ohio St. 139, the Ohio Supreme Court set forth the test for courts to use in determining who is the employer of a person, when an employee in the general employment of one person, has been loaned for the time being to another for a particular task. The test is whether while performing the task, the employee continues to be liable to the direction and control of the general employer, or becomes subject to that of the person to whom he is lent. Thus, inRagone v. Vitale Beltomi, Jr., Inc. (1975),42 Ohio St. 2d 161, the Ohio Supreme Court held the operator of a pumping machine supplying concrete at a construction site, is not a loaned servant of the company receiving the concrete. The court noted the pumper driver was entrusted with a valuable piece of machinery, and could not leave the machine while it was in operation. The contractor accepting the concrete gave no directions to the driver on how to operate the pumper.
 {¶ 21} Likewise, in Hamlin v. The McAlpin Company (1964),175 Ohio St. 517, the driver of a delivery truck was deemed not a loaned servant. In Hamlin, the driver parked his truck at the rear entrance to the store and part of his freight was unloaded. Someone, either an employee of the store or of the contractor who was remodeling the store, told the truck driver to take his truck around the front entrance of the store to unload the remaining part of the freight. While doing so, an employee of the contractor was injured. The court found as a matter of law the driver in the case was not a loaned servant because the entire situation was within the scope of his employment.
 {¶ 22} Appellees direct us to several cases which, while instructive, are not on point. For example, Daniels v. McGregorCompany (1965), 2 Ohio St. 2d 89, involved a worker who was employed by Manpower, Inc. Manpower provides temporary help to individuals and companies, and dispatches skilled or unskilled personnel to the premises of various customers to perform whatever services the customer requests. The Supreme Court found here, there is an understanding the employee is to be paid only by the employer at a certain hourly rate to work for a customer, and the customer has the right to control the manner and means of performing the work. The court found under these circumstances the employee is employed by the customer within the meaning of the Workers' Compensation Act. Although Manpower pays all the Workers' Compensation premiums and Unemployment Compensation premiums, the injured worker cannot bring suit against the customer of the Manpower organization.
 {¶ 23} In Lawson v. May Department Store dba KauffmanDistribution Center (November 27, 2001), Mahoning Appellate No. 00CA191, the Court of Appeals for the Seventh District reviewed a situation where Lawson was employed as truck driver for Ozark Motor Lines. Ozark had a delivery arrangement with the May Company which involved Ozark's drivers delivering merchandise to the May Company, and assisting the May Company employees to off-load the contents of the truck. The parties agreed on these occasions the driver was working under the direction of the May Company employees. Lawson suffered an injury to his shoulder during such a delivery, and received Workers' Compensation benefits through Ozark. The court of appeals noted when one of Ozark's drivers assists another company's employees to unload the deliveries, he received an extra payment of $55 for the extra work. The court found under this situation, Lawson was a loaned servant because he was under the direction of the May Company when he was injured. Even though Lawson received Workers' Compensation from Ozark, the May Company could be immune if it demonstrated it had paid into the State Workers' Compensation Fund pursuant to law.
 {¶ 24} Here, decedent was the general manager of Alum Creek, and there is no evidence in the record demonstrating he was under anyone's direction and control except that of Steven Cross, the owner of Alum Creek. Decedent was the only person who drove the tractor-trailer, and decided when the boats were to be removed on his own initiative.
 {¶ 25} The trial court found as a matter of law Haldeman was working for Cross Enterprises at the time he died. The trial court does not elaborate on this statement, but it may very well be because it mistakenly believed Cross Enterprises owned the pontoon boat. When asked about the ownership of the boat, Steven Cross testified Cross Enterprises owned the boat. Upon learning the boat title said Alum Creek was the owner, Steven Cross explained at first there was no Cross Enterprises, only Alum Creek, but the State of Ohio required him to place the ownership of the concession into a separate entity. Steven Cross testified he had believed the title to the pontoon boat was transferred to Cross Enterprises. In addition, Steven Cross testified when Alum Creek leased the pontoon boat, the money went to Cross.
 {¶ 26} Based on the record before us, we find the evidence demonstrates as a matter of law, Terry Haldeman was working for Alum Creek at the time he died.
 {¶ 27} Next, appellant argues the trial court erred in failing to recognize genuine issues of material fact raised by her employer intentional tort claim.
 {¶ 28} Although the Workers' Compensation Act bars an employee from bringing suit against his or her employer for injuries suffered, the Ohio Supreme Court has recognized an exception to the immunity when the employee proves the employer intended the tort which caused the injuries. To establish intent on the part of the employer, the employee must prove: (1) the employer knew of the existence of the dangerous process, procedure, instrumentality or condition within its business operation; (2) the employer knew if the employee is subjected in the employment relationship to this dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; (3) the employer, under such circumstances and with such knowledge, required the employer to continue to perform the dangerous task, Fyffe v. Geno's, Inc. (1991),59 Ohio St. 3d 15.
 {¶ 29} The trial court found no evidence of any prior injury or death during previous boat extractions, but noted the lack of such evidence is not dispositive. This suggests the employer could not have known harm to one of the employees was substantially certain to occur. Appellant presented the evidence of Richard C. Bendler, who originally constructed the trailer. Bendler testified he warned Mr. Cross not to use the tractor-trailer in low water conditions. Bendler testified his major concern was that the trailer would become mired in the sand and sediment of the lake bed. Bendler testified he was concerned about the safety of any persons using the trailer but did not warn Mr. Cross the possibility someone might drown as a result of using the trailer in low water conditions.
 {¶ 30} Mr. Cross denied being warned about anything by Bendler.
 {¶ 31} The trial court found this was not a genuine dispute of a material fact, because, construing Bendler's testimony most favorably to appellant, the evidence still only establishes general concerns as to potential risks, such as the possibility of harm to property if the trailer became mired in the lake basin rim. The court found Bendler's testimony did not permit the reasonable inference Steven Cross was on notice that boat removals were dangerous or any harm was substantially certain to occur.
 {¶ 32} Appellant also offered evidence demonstrating Mr. Cross' businesses did not comply with certain federal and state regulations, and that Cross maintained what the trial court referred to as a "hands-off approach" to the day-to-day activities of his employees and businesses. The court found if this evidence was admissible, it demonstrated negligence, and perhaps even recklessness, but did not rise to the level of intentional tort.
 {¶ 33} We agree with the trial court there may have been a genuine dispute regarding what Bendler told Cross about using the tractor-trailer, but this fact is not material because, construing it most liberally in favor of the appellant, the evidence does not support a finding of intentional tort.
 {¶ 34} Finally, appellant argues the trial court erred in striking certain of appellant's exhibits she offered in opposition to the motion for summary judgment. These exhibits included statements Steven Cross made to various law enforcement agencies when they investigated Haldeman's death. Steven Cross testified he did not know Haldeman was going to haul the boat out on November 16, but an OSHA report indicated the employer was aware of OSHA requirements and knew employees were removing the boats from the water for winter storage.
 {¶ 35} Appellee cites us to two appellate cases from other districts which held the disposition of an OSHA citation is irrelevant to the issue of an employer's intent, see Heyman v.Stoneco (August 2, 1999), Wood Appellate No. 90WD071; Frazierv. Royal Brass Manufacturing Company (1990),70 Ohio App. 3d 748.
 {¶ 36} We find OSHA citations are not per se evidence of an intentional tort, although under certain circumstances they may be relevant to the issue of intent.
 {¶ 37} Secondly, Steven Cross testified he had no knowledge that hauling the boats out of the low water conditions posed a danger to his employees' safety. Appellant urges this conflicts with Richard Bendler's deposition testimony and statements Cross made to investigating officers. Steven Cross claimed to have no knowledge that the personal floatation devices were locked in their compartments on the boat on November 16, instead of being available and accessible to Ward. Cross claimed no knowledge that only two people would be hauling the boats out, and had never advised the employees on how or when to remove the boats. Appellants argue Cross told an investigator for the Alum Creek State Park Police life vests had been available but were locked up on the boat, and that the employees involved were management and "should have known better". The court struck the Alum Creek State Park Police incident report containing the statement, as well as affidavits from two investigating officers.
 {¶ 38} We have reviewed the various documents, and agree with appellees the records are not self-authenticating, and were not accompanied by affidavits providing the necessary foundation. We find it was not error to exclude them.
 {¶ 39} The trial court also struck the testimony of Henry Lipian, appellant's liability expert. Lipian reviewed the events and circumstances which led to Terry Haldeman's drowning, and gave as his opinion Steven Cross deliberately failed to provide a safe working environment for his employees and failed to address dangerous procedures of which he had been warned. Lipian gave as his expert opinion Steven Cross knew the dangerous procedures in the operations were substantially certain to cause serious injury or death to employees, which in fact happened.
 {¶ 40} Regarding the affidavit of Henry Lipian, appellees suggest much of the information upon which he relied was contained in documents stricken by the trial court or never offered into evidence. Other portions of the affidavit rely on facts not in evidence.
 {¶ 41} We find Lipian's report was for the most part based upon material not properly in the record.
 {¶ 42} Finally, appellants offered evidence that following Terry Haldeman's death, appellees have established written policies' protocols mandating the use of personal floatation devices when working near the water. Appellees now warn their employees about the dangers of hypothermia and cold water drowning, and no longer use the trailer to haul the pontoon boat out of the water during low water conditions. The trial court struck this evidence.
 {¶ 43} We find the trial court was correct. The evidence offered regarding the changes in policy and protocols made after Terry Haldeman's death are evidence of subsequent remedial measures, and are not admissible to prove culpable conduct pursuant to Ohio Evid. R. 407.
 {¶ 44} In conclusion, we find Alum Creek is entitled to immunity pursuant to the Ohio Workers' Compensation Act, because Appellant received benefits and Alum Creek was in compliance with the Act. We further find the record does not demonstrate Cross was involved in the incident, because the boat, the tractor-trailer, and the marina were all under the control of Alum Creek. We find no duty owed to decedent by Cross. We conclude the trial court was correct in entering summary judgment, albeit for different reasons.
 {¶ 45} For the foregoing reasons, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.
Gwin, P.J., Hoffman, J., and Wise, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed. Costs to appellant.