OPINION
{¶ 1} Appellant, Daniel Reising, appeals from the December 2, 2005 decision of the Richland County Court of Common Pleas directing a verdict in favor of appellee Broshco Fabricated Products.
 {¶ 2} This case arises from an industrial accident that occurred on or about May 21, 2003. The accident occurred when appellant, Daniel Reising, was operating a power press, known as Press No. 10, in the course and scope of his employment with appellee Broshco Fabricated Products, a division of Jay Industries. Press No. 10 is a large three ton press that is capable of producing at least four different parts. (1T. at 43). At the time of the accident Appellant was running what is known as Job No. 861. (Id. at 41). Job No. 861 pierces holes in metal tubes and then cuts the metal tube in half. (Id.).
 {¶ 3} On or about May 19, 2004 appellant, Daniel Reising filed a Complaint and Amended Complaint with the Richland County Common Pleas Court against Defendants, Broshco Fabricated Products, Jay Industries; John Doe, No. 1 through 3, and ABC Company, Inc., No. 1 through 3. Appellant asserted an intentional tort claim against Defendants, Broshco Fabricated Products, a division of Jay Industries (hereafter Appellee). Appellant asserted claims against Defendant John Doe No. 1 and ABC Company, Inc. No. 1 alleging defective design, defective manufacture, inadequate warning and failure to conform. Against Defendant John Doe No. 2 and ABC Company, Inc. No. 2 appellant alleged a negligence action. Lastly, appellant asserted an intentional tort claim against John Doe No. 3 and ABC Company, Inc. No. 3 in the event appellee was in fact not the employer of appellant. Ultimately, all defendants, except Broshco/Jay Industries, were voluntarily dismissed by appellant. This case proceeded to trial on November 22, 23 and 29, 2005 against only the appellee.
 {¶ 4} At the time of the accident the appellant had been employed by appellee Broshco Fabricated Products for approximately two years, and at all times had worked in the press department. (1T. at 126). The appellant is still an employee of appellee performing the same functions and operating power presses. (Id. at 162-163).
 {¶ 5} Upon commencing employment with Broshco Fabricated Products, appellant received and read an Employee Manual which included various safety rules. He also attended various press room meetings where safety issues were discussed and the employees were instructed to follow operator procedure instructions. (Id. at 169-171). Appellant admitted attending safety meetings, previous to the subject accident, when he was instructed to make sure that guards are in place and locked before running equipment. (Id. at 170). The appellant admitted that he was educated and properly trained to keep his hands out of moving parts. (Id. at 207).
 {¶ 6} The operator procedure instructions with respect to Press No. 10 were contained in a booklet kept beside the press, and appellant read such instructions and understood them. (Id. at 171-172).
 {¶ 7} The operator procedure instructions maintained beside the subject press included, among other instructions, the following:
 {¶ 8} "10. ENSURE ALL SAFETY DEVICES ARE WORKING PROPERLY. . . .
 * * {¶ 9} "12. COMPLY WITH POSTED SAFETY INSTRUCTIONS.
 {¶ 10} The operator procedure instructions also clearly and unequivocally stated:
 {¶ 11} "* * * * ATTENTION PRESS OPERATORS * * * *
 {¶ 12} "If an object or part is seen in the die area or an area that is in the path of the die which will crash the die or cause a safety problem, the operator will push the emergency stop button and call the supervisor or die setter, at which time the supervisor or die setter will safe out the press to extract the object". (Defendant's Exhibit "H").
 {¶ 13} Prior to the subject accident, the appellant, by writing, acknowledged that he had read and understood those explicit operator instructions. (Defendant's Exhibit "H"; 1T. at 172).
 {¶ 14} Prior to May 21, 2003, the plaintiff had operated Press No. 10 on approximately six occasions and had observed warnings and precautions posted on the press which indicated: "Keep hands out of machine die area when handling stock or parts." (Id. at 172-73). He knew that if he encountered a safety problem he was to push the emergency stop button and call his supervisor. (Id. at 174).
 {¶ 15} Press No. 10, at the time of the subject accident, was configured to run Part 861 which essentially required an operator to load tubes into a hopper, which then transferred the tubes by gravity and vibration down to a die where holes were pierced into the tubes and the tubes were cut off. (Id. at 58-59). At the beginning of his shift on May 21, 2003, appellant was again instructed as to the press operation, including how to shut it off and how to run the tubes. (Id. at 58-59; 3T. at 403). There was steel mesh guarding above the hopper and separating the press operators from moving machine parts, and its purpose was "to prevent anybody from getting into the press." (Id. at 89-90). In the opinions of appellant's immediate supervisor and appellee's maintenance supervisor, such physical barrier guard constituted adequate and proper guarding. (Id. at pp. 76, 87; 3T. at 404). Appellee's personnel did not believe that any employees would be injured. (1T. at. 93). There had been no previous injuries or accidents on Press No. 10. (2T. at 331; 368; 408). In the operation of Press No. 10, the job responsibilities of a press operator like the appellant gave no reason to have any part of the body, whether hands, arms, legs or any other part in the loader or die areas of the press. (3T. at 401; 408). Prior to the accident in question, appellant's supervisor did not believe that Press No. 10 was in any dangerous condition or dangerous setup. (Id. at 407).
 {¶ 16} On May 21, 2003, after appellant had been operating Press No. 10 for a period of time, some tubes improperly went into the die of the press and "crashed" the die. (1T. at 137). Accordingly, appellant followed his training and company procedures and stopped the press by pushing the appropriate stop button, at which point the supervisor eventually came, the machine was repaired and was ready to again produce parts. (Id. at 137-40). Appellant again began operating Press No. 10, which involved loading tubes into the hopper. However, he then observed a tube which was not loaded in the hopper properly and, rather than push one of the stop buttons beside him which would have deactivated the press, he reached around the steel mesh guarding and into the area of the hopper and press to grab the tube. (Id. at 143-44). Appellant described the accident in a written Employee's Report of Incident and Injury, indicating how the accident happened: "I was loading tubes onto the loader. One tube rolled on top of other tubes, and I didn't stop the press before I reached in to get the tube". (1T. at 186).
 {¶ 17} Appellant sustained injury when the press struck his fingers and partially amputated several of them. Appellant also noticed that he lost his work glove on his injured hand. (Id at 145). His supervisor testified that he discovered appellant's severed fingers and work glove in the die area of the press, along with a broken metal tube. (Id at 67).
 {¶ 18} At the time of the accident, appellant understood that the proper procedure under the circumstances he encountered was to stop the press by using one of several buttons beside him, which would have deactivated the press. (1T. at 187). He knew that the proper procedure under such circumstances was to never place his hand into the area he placed his hand at the time of the subject accident. (Id.).
 {¶ 19} Appellee's maintenance supervisor believed that the guarding existing on Press No. 10 provided a safe workplace for the press operators. (1T. at 96). However he admitted that Press 10 as it existed at the time of appellant's injury did not conform to OSHA regulations. (Id at 93).
 {¶ 20} Appellant was taken to the hospital for treatment but ultimately his fingers could not be reattached. Appellee was subsequently cited by OSHA as a result of this industrial accident for failure to provide proper guarding.
 {¶ 21} Appellant admitted at trial that no persons at Broshco Fabricated Products ever instructed him to do something that was unsafe. (Id. at 178).
 {¶ 22} During the course of the trial appellant attempted to introduce evidence that the appellee had been cited by OSHA subsequent to the accident for inadequate guarding on Press 10, and further that Press 10 did not conform to various administrative regulations. The trial court excluded this evidence.
 {¶ 23} Appellee moved for a Directed Verdict at the close of appellant's case. The trial court denied this motion. Appellee again moved for a directed verdict at the close of its own case as to the intentional workplace tort claim and the appellant's claim for punitive damages. The trial court granted these motions.
 {¶ 24} It is from the trial court's granting of appellee's motions for a directed verdict that appellant has timely appealed raising the following assignments of error:
 {¶ 25} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING APPELLEE'S MOTION FOR DIRECTED VERDICT AS TO APPELLANT'S INTENTIONAL TORT CLAIM.
 {¶ 26} "II. UNDER THE FIRST PRONG OF THE FYFFE TEST THERE WAS SUFFICIENT CREDIBLE EVIDENCE UPON WHICH AN ISSUE OF FACT WAS PRESENTED, SUCH THAT THE ULTIMATE ISSUE SHOULD HAVE BEEN RESERVED FOR THE JURY.
 {¶ 27} "III. UNDER THE SECOND PRONG OF THE FYFFE TEST THERE WAS SUFFICIENT CREDIBLE EVIDENCE UPON WHICH AN ISSUE OF FACT WAS PRESENTED, SUCH THAT THE ULTIMATE ISSUE SHOULD HAVE BEEN RESERVED FOR THE JURY.
 {¶ 28} "IV. UNDER THE THIRD PRONG OF THE FYFFEE TEST THERE WAS SUFFICIENT CREDIBLE EVIDENCE UPON WHICH AN ISSUE OF FACT WAS PRESENTED, SUCH THAT THE ULTIMATE ISSUE SHOULD HAVE BEEN RESERVED FOR THE JURY.
 {¶ 29} "V. THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING APPELLEE'S MOTION FOR DIRECTED VERDICT AS TO APPELLANT'S PUNITIVE DAMAGES CLAIM.
 {¶ 30} "VI. THE TRIAL COURT ERRED AS A MATTER OF LAW BY NOT PERMITTING APPELLANT TO INTRODUCE EVIDENCE OF APPELLEE'S OSHA VIOLATIONS AND OHIO ADMINISTRATIVE CODE VIOLATIONS."
 I. — IV. {¶ 31} In his first four assignments of error, appellant contends that the trial court erred by directing a verdict in favor of appellee because sufficient credible evidence created an issue of fact on the issue of whether the appellee committed a workplace intentional tort. Essentially, appellant argues that he presented evidence on the necessary elements and level of proof required in order to demonstrate a workplace intentional tort pursuant to Fyffe v. Jenno's Inc. (1991), 59 Ohio St.3d 115,570 N.E.2d 1108.
 {¶ 32} Pursuant to Civ. R. 50, a trial court must construe the evidence most strongly in favor of the party against whom the motion is directed, and if it finds that upon any determinative issue reasonable minds could come to but one conclusion on the evidence submitted, and this conclusion is adverse to the non-moving party, then the court shall sustain the motion and direct a verdict for the non-moving party as to this issue. The reasonable minds test calls upon the court only to determine whether there exists any evidence of substantial probative value in support of the claims of the party against whom the motion is directed, Wagner v. Roche Laboratories (1996),77 Ohio St.3d 116, 671 N.E.2d 252. The motion for directed verdict raises a question of law because it examines the materiality of the evidence as opposed to the conclusions which may be drawn from the evidence, Ruta v. Breckenridge-Remy Company (1982),69 Ohio St.2d 66, 23 OO 3d 115, 430 N.E.2d 935. Because a motion for directed verdict presents a question of law, our standard of reviewing a trial court's judgment on a directed verdict is de novo, Titanium Industries v. S.E.A, Inc. (1997),118 Ohio App.3d 39, 691 N.E.2d 1087.
 {¶ 33} The injury in the case at bar pre-dates Ohio's latest version of the intentional tort statute and as a consequence case law governs.
 {¶ 34} "The law setting forth the necessary elements and level of proof required in order to demonstrate a workplace intentional tort is well established. In Fyffe,59 Ohio St.3d 115, 570 N.E.2d 1108, we modified and explained the three-prong test originally set forth in Van Fossen v. Babcock Wilcox Co.
(1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, that an employee must satisfy in order to prevail on a workplace intentional tort claim against an employer. We held inFyffe that `in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.' Id., 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus".
 {¶ 35} "In paragraph two of the syllabus in Fyffe, we further outlined the proof necessary to establish intent on the part of the employer when we stated that `[t]o establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent.'" Gibson v. DrainageProducts, Inc. (2002), 95 Ohio St.3d 171, 174-75, 2002-Ohio-2008
at ¶ 16-17. 766 N.E.2d 982, 986-87.
 {¶ 36} The Court in Gibson, supra, further noted "[t]hus, for purposes of surviving a motion for directed verdict, it is not necessary for an employee to show that the employer expressly ordered the employee to engage in the dangerous task. Instead, the third element of the Fyffe test can be satisfied by presenting evidence that raises an inference that the employer, through its actions and policies, required the employee to engage in that dangerous task. Hannah, 82 Ohio St.3d at 487,696 N.E.2d 1044. Moreover, Hannah was quite explicit in its determination that a jury issue arises concerning the third element of the Fyffe test when sufficient credible evidence is presented that the employer merely expected the employee to engage in a dangerous task. Id". Gibson 95 Ohio St.3d at 177,2002-Ohio-2008 at ¶ 24, 766 N.E.2d at 989.
 {¶ 37} Appellant contends in his second assignment of error that the employer had knowledge of a dangerous process, procedure, instrumentality or condition with regard to Press No. 10. In his third assignment of error appellant argues that the injury to appellant was substantially certain to occur. In his fourth assignment of error appellant maintains that appellee, under such circumstances, and with such knowledge, did act to require the appellant to continue to perform the dangerous task.
 {¶ 38} Appellant submits that evidence that the press was not compliant with OSHA regulations, and that the employer did not utilize a more sophisticated guarding system establishes that the employer had knowledge that the injury was substantially certain to occur and that the employer nevertheless continue to require the appellant to operate Press 10. We disagree.
 {¶ 39} In Sanek v. Duracote Corp., 43 Ohio St.3d 169,539 N.E.2d 1114 (1989), the Ohio Supreme Court commented on an intentional tort plaintiff's difficult burden. In Sanek, the plaintiff claimed that his former employer had committed an intentional tort by failing to guard the rotating shaft of a power mixer. Although the employer's failure to guard the shaft violated an OSHA regulation, and the plaintiff's expert testified that the shaft should have been guarded and "somebody will be injured by that rotating part over a period of time," the Supreme Court held that such facts were insufficient as a matter of law to submit the claim to the jury:
 {¶ 40} "In a case such as this, the employee at all times has the burden to demonstrate that the employer had knowledge amounting to substantial certainty that an injury could take place. . . . The focus of an intentional tort action under the standards set forth in Blankenship, Jones, and Van Fossen,supra, is on the knowledge of the employer regarding the risk of injury. The plaintiff has the burden of proving by a preponderance of the evidence that the employer had `actual knowledge of the exact dangers which ultimately caused' injury. . . . The intentional tort issue goes to a jury only if there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential issue of the case. . . .
 {¶ 41} "Appellant could hardly be expected to have anticipated the actions of appellee which lead to his injury. Analyzing the totality of the circumstances, appellant's actions under the facts in this case simply do not rise to the level of risk-exposure of appellee so egregious as to constitute an intentional wrong. The facts in this case, construed most strongly in favor of appellee, do not permit reasonable minds to conclude that the requirements of proving an intentional tort by Duracote were met. Nor would a cause of action lie under a simple common-law action for a tort premised on intentional misconduct by a tortfeasor.
 {¶ 42} "It must be emphasized that "[t]here are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an `intentional tort' and therefore an exception under Blankenship or Jones to the exclusivity of the Act."
 {¶ 43} In this case, the Court is equally convinced that the appellant has failed to sustain his burden of setting forth "specific facts which show that there is a genuine issue of whether the employer had committed an intentional tort against his employee." Van Fossen, supra, paragraph 7 of the syllabus. The evidence established, among other things, that appellant's accident was the only such accident ever to take place running Job 861 on Press 10. Appellant had run Press 10 on six occasions. (1T. at 132-33). Appellant was unaware of any other employee sustaining any injury while operating Press 10. (Id. at 198). No employee, including appellant, had ever made any complaint about any alleged dangerousness of Press 10. (2T. at 331; 368; 408).
 {¶ 44} Moreover, appellant concedes that he was instructed in the operation of Press 10; and he was further instructed in the operation of Press 10 and Job 861 on the day of the accident. (1T. at 135-36). Shortly before the accident appellant in handling a misfeed followed his training and company procedures by stopping the press and notifying his supervisor. (1T. at 60; 61-62; 136-40; 174-175). Appellant admitted he was aware of a warning posted on the press itself which warned operators to keep their hands out of the machine die area when handling stock or parts. (1T. at 173; 187). Appellant further agreed that he had no problem or objection to company's operating procedures or employee manual instructions. (Id. at 176). Appellant admitted he was not following those instructions at the time of the accident. (Id. at 187; 194-95).
 {¶ 45} Translating our holding into the terms of the three-part Fyffe test, it can be said that no reasonable jury would find that appellee knew that an injury to the operator of Press 10 was substantially certain to occur. If the operator followed his instructions and turned the machine off upon noticing that a tube had misfed as he was told, there was only an insignificant probability that he would be injured. Appellee did not know, and was not required to anticipate, that appellant would decide on his own to violate the established procedures. An employer has no duty to anticipate that an employee will fail to follow instructions. Sanek v. Duracote Corp., supra,43 Ohio St.3d at 172.
 {¶ 46} In Bader v. Therm-O-Disc, Inc. (Sept. 5, 1990), Richland App. No. CA-2732, a case similar to the one at bar, the employee was assigned to operate what was essentially a crimping machine that connected wires to a thermostat. The employer removed a safety guard from the ends of a small trough where the press descended and crimped the wires. This guard interfered with the use to which the employer put this press. The employer provided a wire brush to the employee and instructed her to use the brush to clear out the bits of wire debris from inside the trough. On the day in question, the employee disregarded her instructions and used her left index finger to clear away the debris. She accidentally started the machine and her finger was amputated. We affirmed summary judgment for the employer because no other employee had been injured and because the employee failed to follow her employer's instructions to use the brush when cleaning the trough. In Bader, the employee failed to follow proper procedures to clean the punch-press, and the employer was not liable for her injuries as a matter of law.
 {¶ 47} Appellant further argues that evidence and testimony supports his position that his injury was substantially certain to occur under the second prong of the Fyffe test.
 {¶ 48} The evidence and testimony of appellant's expert suggests that the failure to install a "light curtain" or more adequate guarding made injury to "someone at sometime" inevitable. A "light curtain" utilizes a light beam which if broken, for example by the operator inserting his hand in the guarded environment, automatically shuts down the machine.
 {¶ 49} In the case at bar, other operators of Press 10 testified that they never observed any unsafe conditions, and if they had observed an unsafe condition they could stop Press 10 by pressing a button located next to the operator's hip. (3T. at 359-60; 369). Evidence was also presented that the "light curtain" was designed to be used in connection with a manual feed operation of Press 10. (2T. at 325-26; 347-48). Additionally, evidence was presented that with the present operation of the press configured to run Job 861, which was an automatic feed as opposed to a manual feed, the "light curtain" would impede the press by shutting it down each time an operator loads the hopper. (1T. at 47-48; 90-92; 3T. at 366-67).
 {¶ 50} Although evidence was presented to the effect that a "light curtain" which had been used with the subject press for jobs other than Job 861 was not present at the time of the accident, and might have prevented appellant's injury, such evidence does not establish the existence of an intentional tort as defined by the Ohio Supreme Court. An expert's opinion "does not establish that element as a legal conclusion." Teal v.Colonial Stair and Woodwork Co., Fayette App. No. CA2004-03-009,2004-Ohio-6246, ¶ 17; see, also, Sanek. Rather, the opinion "must create a genuine issue of material fact from a legal standpoint." Id. Despite the expert's opinion and the testimony to the contrary, the facts of this case do not demonstrate a substantial certainty that the accident would occur. Even if we accept that a "light curtain" or other guard should have been in place, "the failure to provide available safety devices may constitute negligence or recklessness, but does not constitute substantial certainty." Sanek at ¶ 22, 539 N.E.2d 1114. Likewise, even if appellant's training was inadequate, "it would constitute negligence or recklessness at best, and would not rise to the level of substantial certainty." Sanek v. DuracoteCorp., supra; Davis v. AK Steel, 12th Dist. No. CA 2005-07-183, 2006-Ohio-596; Barder v. Therm-O-Disc, Inc.,
supra.
 {¶ 51} With respect to the third prong of the Fyffe test appellant admitted that no one at the company required him to do something that was unsafe or to attempt to dislodge a part that was stuck without first stopping the press. (1T. at 178; 195). Appellant's own testimony reveals that even he has no reason to believe that appellee intended to injure him. (Id. at 187).
 {¶ 52} In view of all of the foregoing, especially the undisputed fact that this was an isolated injury which occurred without any prior similar incident or complaint by the appellant or anyone else, and which occurred while the appellant was failing to follow his employer's instructions to stop the press in the event of a misfeed, the trial court correctly concluded that the appellant has failed to demonstrate, as required byFyffe, that appellee knew that Press 10 was dangerous, knew that harm to its employees would be a "substantial certainty and not just a high risk," and with such knowledge acted to require appellant "to continue to perform the dangerous task."
 {¶ 53} Accordingly, appellant's first, second third and fourth assignments of error are overruled.
 V. {¶ 54} In his fifth assignment of error, appellant argues the trial court erred by directing a verdict as to his claim for punitive damages.
 {¶ 55} In light of our finding that the trial court properly directed a verdict in appellee's favor concerning a workplace intentional tort, this assignment of error is moot.
 VI. {¶ 56} In his sixth assignment of error appellant maintains that the trial court erred as a matter of law by not permitting appellant to introduce evidence of appellee's OSHA violation which occurred after the appellant's accident. Appellant further contends the trial court erred by not permitting him to present evidence regarding appellee's compliance with various OSHA and Ohio Administrative Code regulations. We disagree.
 {¶ 57} Questions relating to the admissibility of evidence are within the discretion of the court and, absent an abuse of that discretion, will not be overturned on review. Calderon v.Sharkey (1982), 70 Ohio St.2d 218, 219, 24 O.O.3d 322, 323,436 N.E.2d 1008, 1010. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id.
 {¶ 58} With respect to the OSHA violation, we note that the Ohio Supreme Court clearly held that "Congress did not intend OSHA to affect the duties of employers owed to those injured during the course of their employment." Hernandez v. MartinChevrolet, Inc. (1995), 72 Ohio St.3d 302, 303, 649 N.E.2d 1215,1216. Additionally, an OSHA violation is insufficient to establish even negligence per se. Id. Furthermore, "[t]he violation of an administrative rule does not constitute negligence per se; however, such a violation may be admissible as evidence of negligence". Chambers v. St. Mary School (1998),82 Ohio St.3d 563, 1998-Ohio-184, 697 N.E.2d 198 at syllabus.
 {¶ 59} In Haldeman v. Cross Enterprises, Inc., 5th Dist. No. 04-CAE-02011, 2004-Ohio-4997, this court noted "[w]e find that OSHA citations are not per se evidence of an intentional tort, although under certain circumstances they may be relevant to the issue of intent."
 {¶ 60} Evid.R. 407 provides that evidence of subsequent measures is inadmissible to prove negligence or culpable conduct. The rule, however, does not exclude such evidence when it is offered for other purposes, including impeachment. If a purpose other than to show negligence or culpability is properly advanced, then evidence of subsequent measures, if relevant, should be admitted. See McFarland v. Bruno Machining Corp.
(1994), 68 Ohio St.3d 305, 307-308, 626 N.E.2d 659, 660-661.
 {¶ 61} "OSHA citations, standing alone, do not demonstrate an intent to injure." Fleck v. Snyder Brick and Block (Mar. 16, 2001), Montgomery App. No. 18368; see, also, Vermett v. FredChristen and Sons Co. (2000), 138 Ohio App.3d 586, 603,741 N.E.2d 954 (refusing to consider an OSHA violation issued after an accident in determining substantial certainty and stating that OSHA does not affect an employer's duty to an employee); Crossv. Hydracrete Pumping Co. (1999), 133 Ohio App.3d 501, 507 n. 1,728 N.E.2d 1104 (stating that the employee's "attempt to impute actual knowledge through an OSHA violation is misplaced. An OSHA violation might present evidence of negligence."); Neil v.Shook (Jan. 16, 1998), Montgomery App. No. 16422 ("We conclude that the prior OSHA violations do not manifest the substantial certainty of harm required, but are only one of many factors to be considered."). An employer's failure to follow proper safety procedures might be classified as grossly negligent or wanton, but does not constitute an intentional tort. Neil, supra (citing Young v. Miller Bros. Excavating, Inc. (July 26, 1989), Montgomery App. Nos. 11306 and 11307.
 {¶ 62} In the case at bar, prior to the accident no workers had been injured in any way on Press 10. See, e.g., Van Fossen
at 118, 522 N.E.2d 489. Appellant had used Press 10 in the past. He further knew and utilized the proper procedure to clear a misfeed shortly before the accident. There had been no complaints about the safety of the press by either employees or supervisors. Appellant, himself, never questioned anyone about guarding the press.
 {¶ 63} Appellee was never cited for a lack of guarding on the particular press at issue prior to the accident. See Sanek,supra, at 170-71, 539 N.E.2d 1114. Appellee insists it is significant that after his injury, appellee was cited by OSHA and placed additional guards on Press 10. Nonetheless, neither the safety violations nor the corrective action, separately or collectively, are adequate in this situation for a reasonable jury to infer that appellee believed there was a substantial certainty of injury to appellant. See, e.g., Bond v. HowardCorp., 72 Ohio St.3d at 338, 650 N.E.2d 416; Spitler v. K CService Station Maintenance Co. (1993), 90 Ohio App.3d 49,627 N.E.2d 1073.
 {¶ 64} Further, at trial appellant was permitted to question witnesses on the subject of compliance with OSHA machine guarding requirements. John Vidonish, appellee's maintenance supervisor testified:
 {¶ 65} "Q. Okay. Are you familiar with OSHA regulations?
 {¶ 66} "A. Yes.
 {¶ 67} "Q. Are you of the opinion that the guarding as depicted on that photograph there conformed with OSHA regulations?
 {¶ 68} "A. No.
 {¶ 69} "Q. It did not?
 {¶ 70} "A. It did not".
 {¶ 71} (1T. at 92-93). Ken Bower, appellee's safety manger testified:
 {¶ 72} "Q. Looking at that picture, looking at that press and that configuration, does that guarding on that press conform to OSHA requirements?
 {¶ 73} "A. It would appear it would, but evidently it did not."
 {¶ 74} (1T. at 105). Appellant was further permitted to question the witnesses concerning audits of appellee by administrative agencies and violations of OSHA standards. (1T. at 110-112; 115-120). The trial court also allowed appellant to elicit testimony that additional guards were put into place on Press 10 subsequent to the accident. (1T. at 51-52; 61-62; 97; 159; 228; 245).
 {¶ 75} Based upon the foregoing the trial court did not abuse its discretion by excluding evidence of appellee's OSHA violation which occurred after the appellant's accident and evidence regarding appellee's compliance with various OSHA and Ohio Administrative Code regulations.
 {¶ 76} Appellant's sixth assignment of error is overruled.
 {¶ 77} For the foregoing reasons, the judgment of the Richland County Court of Common Pleas, Ohio, is affirmed.
By Gwin, J., Wise, P.J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Court of Common Pleas, Ohio, is affirmed. Costs to appellant.