OPINION
{¶ 1} On September 15, 2003, Steven Durbin and Jason Matthews, employees of appellee, Kokosing Construction Company, Inc., were installing a temporary sewer line for a business along the State Route 79 project. Appellee was under contract with the Ohio Department of Transportation (hereinafter "ODOT") to serve as general contractor on the highway project. Mr. Matthews was responsible for digging a trench and Mr. Durbin was responsible for installing and connecting the piping in the trench. Mr. Durbin was inside the trench when the wall of the trench caved in, causing Mr. Durbin's death. Mr. Durbin and Mr. Matthews were assigned the job by Steve Marincic, appellee's superintendent for the project.
 {¶ 2} On October 8, 2004, appellant, Joel Durbin, Mr. Durbin's son, filed a complaint as executor of his father's estate against appellee, claiming an intentional tort.
 {¶ 3} On November 30, 2005, appellee filed a motion for summary judgment. By judgment entry filed February 2, 2006, the trial court granted the motion.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 5} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT/APPELLEE KOKOSING CONSTRUCTION COMPANY, INC."
 I {¶ 6} Appellant claims the trial court erred in granting summary judgment to appellee. We disagree.
 {¶ 7} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins, 75 Ohio St.3d 447, 448,1996-Ohio-211:
 {¶ 8} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex. rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."
 {¶ 9} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35.
 {¶ 10} On a side issue, this writer notes this court discussed the admissibility of OSHA violations in intentional tort cases inReising v. Broshco Fabricated Products, Richland App. No. 2005CA0132,2006-Ohio-4449, ¶ 58-59, as follows:
 {¶ 11} "With respect to the OSHA violation, we note that the Ohio Supreme Court clearly held that `Congress did not intend OSHA to affect the duties of employers owed to those injured during the course of their employment.' Hernandez v. Martin Chevrolet, Inc. (1995),72 Ohio St.3d 302, 303, 649 N.E.2d 1215, 1216. Additionally, an OSHA violation is insufficient to establish even negligence per se. Id. Furthermore, `[t]he violation of an administrative rule does not constitute negligence per se; however, such a violation may be admissible as evidence of negligence'. Chambers v. St. Mary School (1998),82 Ohio St.3d 563, 1998-Ohio-184, 697 N.E.2d 198 at syllabus.
 {¶ 12} "In Haldeman v. Cross Enterprises, Inc., 5th Dist. No. 04-CAE-02011, 2004-Ohio-4997, this court noted `[w]e find that OSHA citations are not per se evidence of an intentional tort, although under certain circumstances they may be relevant to the issue of intent.'"
 {¶ 13} This writer did not participate in the either theReising or Haldeman opinions, and believes the best course is to exclude evidence of OSHA violations in intentional tort cases.
 {¶ 14} The trial court's decision granting summary judgment does not specifically enumerate why summary judgment was appropriate. The law on intentional torts in Ohio contains the following three-prong test:
 {¶ 15} "* * * in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (Van Fossen v. Babcock Wilcox Co. [1988],36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)" Fyffe v. Jeno's, Inc. (1991),59 Ohio St.3d 115, paragraph one of the syllabus.
 {¶ 16} We note the motion for summary judgment was based and briefed on all three prongs of the Fyffe decision. It is with this in mind that we choose to address the third prong as it is determinative of the case sub judice.
 {¶ 17} Under a summary judgment standard, we will construe the facts in a light most favorable to appellant. Based upon this standard and after a review of the depositions of Jason Matthews, Steve Marincic, Jeff Wollenburg, an inspector for ODOT, Monty Hale, appellee's foreman on the project, James Scalf, an operator for appellee, Lester Rockwell, a retired project superintendent for appellee, David Mattson, appellee's area manager and Mr. Marincic's direct supervisor, Nasseem Ahmad, a transportation engineer for ODOT, and Joseph Sellers, a safety officer for appellee, we find the following undisputed facts:
 {¶ 18} 1. There was no "competent person" as defined by OSHA regulations present at the actual job site. Mattson depo. at 30, 43.
 {¶ 19} 2. The possible competent persons available were Mr. Marincic, Mr. Hale, and Robert Koelbl and Ron Peters, appellee's labor foremen. Mattson depo. at 30, 52; Marincic depo. at 23, 34-35, 38.
 {¶ 20} 3. The job site was not a specified, engineered project, but was an emergency temporary fix under "force account" to correct a damaged sewer line as a result of the construction on the highway project. Marincic depo. at 83; Ahmad depo. at 15-17; Wollenburg depo. at 63-64. The temporary sewer line was to end at a manhole. Ahmad depo. at 14.
 {¶ 21} 4. When the project began on Saturday, September 13, 2003, following a Morning Action Plan meeting, neither Mr. Marincic nor Mr. Hale expected the trench to be deeper than four feet. Hale depo. at 17-19, 26, 31; Marincic depo. at 108-109.
 {¶ 22} 5. Because of the slope of the land, a natural fall, it was presumed the trench would not be any deeper than two to four feet and maintain an even depth as it approached the manhole. Matthews depo. at 28, 30; Marincic depo. at 108-110; Hale depo. at 17.
 {¶ 23} 6. Mr. Marincic and Mr. Hale had not seen the job site and the depth of the trench and the height of the spoil piles (excavated materials) since around noon on Monday, September 15, 2003, the day of the accident. Marincic depo. at 37; Hale depo. at 19. The last time the trench was seen by Mr. Hale, it was four feet, and there was no expectation that it would need to be benched. Hale depo. at 19, 31.
 {¶ 24} 7. Jeff Wollenburg, ODOT's project inspector, was at the site around 11:00 a.m. on Monday and noticed the water line was too shallow and thought the sewer line being installed by Mr. Durbin and Mr. Matthews would need to go under the water line at some point. Wollenburg depo. at 17, 21-23. Mr. Wollenburg decided to discuss the matter with Mr. Ahmad. Wollenburg depo. at 23.
 {¶ 25} 8. At 3:30 p.m., Mr. Wollenburg instructed Mr. Durbin and Mr. Matthews to place the sewer line under the water line. Matthews depo. at 59-60; Wollenburg depo. at 22-24. Also at this time, Mr. Wollenburg noticed the spoil piles were less than twenty-four inches away. Wollenburg depo. at 42-43.
 {¶ 26} 9. At the time of the accident, the lowest depth of the trench was six feet two inches. Wollenburg depo. at 41. Given the measurements by Mr. Wollenburg at 3:30 p.m. of the water line at approximately three feet ten inches and the measurements of the diameter of the water line pipe (twelve inches) and the sewer line pipe (six inches), the minimum depth to trench under the water line would be five feet four inches. Wollenburg depo. at 37-39. The actual measurement of the trench was six feet two inches at the lowest depth and four feet eleven inches at the highest depth. Matthews depo. at 137.
 {¶ 27} Apart from these facts, both parties agree a trench that is greater than five feet deep must be benched or sloped, and the spoil piles must be at least twenty-four inches away. Hale depo. at 13. The cause of the accident was a trench that was dug too deep for the conditions, causing a side fracture of the trench. Mattson depo. at 26.
 {¶ 28} Appellee concedes that digging a trench is a dangerous condition (prong one of Fyffe), and appellant's expert opined when digging a trench deeper than five feet without a "competent person" present is an accident that is substantially certain to occur (prong two of Fyffe). See, Affidavit of Robert Beisel, attached to Plaintiff's Memorandum Contra filed January 31, 2006.
 {¶ 29} However, with the specific facts and time sequence, the case for an intentional tort fails under the third prong of Fyffe. It was not until thirty minutes, at the most, before this tragic accident, that Mr. Durbin and Mr. Matthews were told to dig under the water line or to a depth greater than five feet. Within these thirty minutes, none of appellee's supervisory employees were notified or told of Mr. Wollenburg's directive. Further, because this was a "force account" project, no specifications, drawings or plans would have even notified appellee that a water line was present in the immediate proximity to the manhole where the temporary connect was to occur.
 {¶ 30} We find the trial court did not err in granting summary judgment to appellee because the facts construed most favorably for appellant do not establish that appellee had knowledge of the increased depth that was created by Mr. Wollenburg's directive. Therefore, there was no act by appellee requiring Mr. Durbin "to continue to perform the dangerous task" i.e., laying the pipe in the deep trench without benching or shoring the trench.
 {¶ 31} The sole assignment of error is denied.
 {¶ 32} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed. By Farmer, J. Wise, P.J. concur Hoffman, J. concurs separately.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio is affirmed.